In the Matter of NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, and Allstate Insurance Company, Petitioners.

No. 87–3061.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 12, 1988.

Decided Feb. 5, 1988.

Rehearing and Rehearing En Banc Denied April 14, 1988.

James G. Hiering, Keck, Mahin & Cate, Dennis C. Waldon, Jeffrey I. Berkowitz, A. Benjamin Goldgar, Chicago, Ill., for petitioners.

Franklin P. Auwarter, Mayer, Brown & Platt, H. Blair White, Sidley & Austin, Gary L. Prior, McDermott, Will & Emery, Lowell E. Sachnoff, Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., J. Alan Galbraith, Williams & Connolly, Washington, D.C., Mitchell S. Rieger, Schiff Hardin & Waite, Leonard M. Ring, Leonard M. Ring & Assoc., Francis J. McConnell, c/o Kovar, Nelson & Brittain, Chicago, Ill., for respondents.

Before WOOD, CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

The financial troubles of Continental Illinois National Bank have produced a number of suits against the Bank and its officers. Three of Continental's insurers have sought declaratory judgments concerning the scope of their coverage. These declaratory judgment actions are before a fourth judge, the first three having recused themselves. Judge Shadur has declined to follow suit. Two of the three insurers have asked us to remove him from the case on the ground that his "impartiality might reasonably be questioned", 28 U.S.C. § 455(a). Mandamus is the insurers' proper remedy, *SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir.1977); *Pepsico, Inc. v. McMillen*, 764 F.2d 458 (7th Cir.1985); *New York City Housing Development Corp. v. Hart*, 796 F.2d 976 (7th Cir.1986); indeed it is their only remedy, *United States v. Balistrieri*, 779 F.2d 1191, 1204–05 (7th Cir. 1985). Contra, *In re City of Detroit*, 828 F.2d 1160, 1165–67 (6th Cir.1987) (review available only after entry of final judgment).

Judge Shadur's son Robert is a lawyer. In February 1987 Continental hired Robert Shadur to represent it in a $5 million revolving credit transaction with the beneficial interest in a voting trust as security. Continental chose Robert Shadur at the debtor's request because he had recently represented Chemical Bank, a longstanding client, in a similar transaction with the same collateral. The debtor, which was to pay Continental's legal costs, wanted to avoid the time and expense of educating Continental's regular counsel about an unusual transaction. Robert Shadur advised his father of the retention. Judge Shadur immediately informed counsel and asked for their views:

> Without in any way abdicating my responsibility [to decide whether my "impartiality might reasonably be questioned"], I believe it would be useful to obtain the observations of counsel to make certain that I will have taken into account all possible considerations bearing on that standard.
>
> At the same time, under no circumstances do I intend to create a situation in which anyone feels constrained from commenting because I may, after full consideration, conclude that the cases should properly be kept on my calendar (with counsel therefore having to be concerned lest any comments suggesting possible recusal might redound to their disadvantage). Accordingly, I am designating plaintiffs' counsel to be respon-

sible for (1) receiving all comments and then (2) transmitting them in redacted form that excludes all identification of the parties or lawyers involved.

Twenty law firms submitted responses in March 1987. Nineteen saw no reason why Judge Shadur could not continue to preside. One firm, representing two insurers, objected on the ground that Robert Shadur's work for Continental created an appearance of impropriety. This firm, Keck, Mahin & Cate, attached its name to the objection, despite Judge Shadur's instructions. Continental's response described the circumstances of Robert Shadur's retention and representation in some detail; because such a response could not be anonymous, Continental also identified itself.

In open court Judge Shadur said that "[m]y own look at the authorities does not suggest to me that the standard of 455(a) has been approached let alone met." Still concerned lest he overlook something, Judge Shadur solicited an opinion of the Advisory Committee on Codes of Conduct of the Judicial Conference. While waiting for the Committee's response, Judge Shadur continued to preside. The Committee's reply stated:

[R]ecusal is appropriate in the circumstances you have outlined. Remittal of disqualification, as provided by Canon 3D, is available only where a judge has already determined that under the circumstances the judge's impartiality might reasonably be questioned.... If impartiality may not reasonably be questioned, the judge is not disqualified and ought not to initiate the remittal procedure.

However, once a judge initiates the remittal procedure, whether or not there was a sufficient basis to do so, recusal is warranted whenever waivers are not obtained from all parties and all counsel. In such circumstances the parties and counsel are entitled to conclude that the remittal was sought only because the judge did believe that the judge's impartiality might reasonably be questioned. Moreover, in the circumstances you have outlined, recusal is additionally warranted because you have become aware of the identity of the counsel who declined to agree to your remaining in the case.

The committee notes Canon 3D's provision for lawyers agreeing "independently of the judge's participation" as indicating a need to arrange matters so that the judge will not learn who did, and who did not, consent to the waiver. See also *Resolution L,* Judicial Conference of the United States, October, 1971.

After receiving this letter, Judge Shadur issued an opinion on August 31, 1987, declining to recuse himself. He concluded that the Committee misunderstood the procedure he had employed to seek the views of counsel. He had not sought a "remittal of disqualification" under Canon 3D of the Code of Judicial Conduct; he had sought factual information and legal advice about the application of § 455(a). Judge Shadur then held that as an original matter he is not disqualified. A judge's impartiality might "reasonably be questioned" only when a well-informed observer would doubt the judge's objectivity and disinterest. Judge Shadur thought that his son's representation of Continental would not occasion such a doubt. Four months later, the two insurers filed this petition for mandamus, asking us to remove Judge Shadur from the case and to vacate every order entered since March 1987. See *New York City Housing Development Corp.,* 796 F.2d at 979; *United States v. Murphy,* 768 F.2d 1518, 1539–41 (7th Cir.1985).

I

Section 455 and Canon 3C set out in detail the extent to which a relative's employment or financial interests disqualify a judge. Section 455(b)(4) says that if the "spouse or minor child residing in [the] household" of a judge has a "financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding", then the judge must step aside. Robert Shadur is not a "minor child" residing with Judge Shadur and does not have a financial interest that could be affected by the outcome of the case. Section 455(b)(5)

provides that the judge is disqualified if a relative within the third degree

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding; [or]

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

Canon 3C(1)(c) and (d) use almost identical language. None of this poses the slightest problem for Judge Shadur's service.

The care with which these rules are drafted should make a court hesitate to treat the general language of § 455(a) as a bar to judicial service whenever a relative has "something to do with" a party—which is pretty much how the insurers ask us to use § 455(a). The judicial system has an interest in precise rules for disqualification, to reduce the time that must be spent fencing about *who* decides the case and get on with decision. Ruling on a motion for recusal is difficult business, and in the process tempers may become frayed, as they have in this case. Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, see *New York City Housing Development Corp.*, 796 F.2d at 980–81, because a change of umpire in mid-contest may require a great deal of work to be redone (as the insurers ask here) and facilitate judge-shopping.

To hesitate is not to say that the affairs of an emancipated child never call a judge's impartiality into question. Affiliations that pose risks similar to those identified in § 455(b) may call for disqualification under § 455(a). Parent and child have an emotional bond and sometimes a financial link. One's gain is the other's, at least to an extent. See generally Gary S. Becker, *A Treatise on the Family* 172–201 (1981). A parent may share a child's joy, may bask in reflected glory from a child's success, may receive support in old age from the child's wealth (or reduce the payments he makes for the child's benefit in life or by will). A $50 gift from Continental to Judge Shadur would disqualify him; a $5,000 gift from Continental to Robert Shadur could be worth more than $50 to Judge Shadur.

Thus the affairs of emancipated children have at least the potential to call a judge's impartiality into question. Yet this chain supposes that Continental has made a gift to Robert Shadur, paying him more than the market price of his services. If Robert Shadur has earned his fee, he has surrendered something of value in exchange—his time, including the opportunity to work for someone else. The lawyer is better off (why else did he accept the engagement?), but not by the amount of the fee. An arms' length transaction between Robert Shadur and Continental does not create significant danger. The insurers do not suggest that Continental hired Robert Shadur in order to make Judge Shadur happy; they do not suggest that Continental paid Robert Shadur more than the market price of his services; they do not suggest that this work on a unique transaction presages future engagements; they do not even suggest that Continental took the initiative (both Robert Shadur and Continental state that the borrower suggested the retention and paid the bill).

The most that could be said is that someone who did *not* know the circumstances of Robert Shadur's employment might perceive the possibility that this was a method of producing an indirect benefit for Judge Shadur or would make him feel kindly toward his son's benefactor. We have stressed, however, that the appropriate inquiry under § 455(a) is whether an informed, reasonable observer would doubt the judge's impartiality. *Pepsico; New York City Housing Development Corp.; Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F.2d 710, 714–15 (7th Cir. 1986). Judges regularly sit in cases that could affect their well-being tangentially. A judge who owns a house could be affected by a decision influencing the rate of interest, a judge who owns stock in the coal industry could be affected by a decision in a case concerning nuclear power, and so on. These indirect effects do not cause informed, reasonable observers to doubt a judge's disinterest. We therefore concluded in *New York City Housing Development Corp.* that a judge's ownership of municipal bond funds did not disqualify

him in a case involving bonds issued by a different municipality, even though the funds had been underwritten by a party to the case. We held in *Union Carbide* that the prospect that a judge would resent her husband's need to sell stock (and pay a brokerage fee) so that she could sit in a case was insufficient to call her impartiality into reasonable question. We held in *S.J. Groves & Sons Co. v. Teamsters*, 581 F.2d 1241, 1246–49 (7th Cir.1978), that participation in an early stage of the case of a law firm in which the judge's brother was a partner did not require the judge to withdraw after the law firm had dropped out of the case. Thereafter neither the judge nor his brother had any interest in the outcome of the case. There is even less reason for disqualification in today's case, for Robert Shadur did not represent Continental at any time in the matter before Judge Shadur. Neither Robert Shadur nor Judge Shadur has any interest in the outcome of this case. The fact that Robert Shadur's employment on over-generous terms would have given an indirect benefit to Judge Shadur would not lead a reasonable observer to conclude that Robert Shadur's actual engagement—lasting about a month and paying less than $10,000—affected Judge Shadur's ability to preside impartially.* Cf. *CBI Industries, Inc. v. Horton*, 682 F.2d 643 (7th Cir.1982).

It is easy to hypothesize facts that would lead to a different conclusion. Suppose shortly after the insurers filed this action, Continental had hired Robert Shadur's firm as its principal outside counsel at an hourly rate greater than the one the firm had been charging. This would give Robert Shadur the sort of interest in Continental that an "officer" of the firm enjoyed, and Robert's

being an "officer" of Continental would disqualify his father. An engagement that created a likelihood of significant future work for Continental also would require the judge to step aside. A large, satisfied client can be a source of a lifetime's income, and a retention in one case with the implicit promise that "there's lots more where that came from, if we're satisfied with your father's decision" would create a threat of partiality too great to tolerate. An engagement on a single loan of unusual characteristics is not similar in quality or quantity to the sort of disqualifying interests listed in § 455(b), however, and therefore does not call for disqualification under § 455(a).

Any other approach would be difficult to cabin. Suppose Robert Shadur owned some stock in Continental. This does not call for Judge Shadur's recusal under Canon 3C or § 455(b)(4) and (5), but it would if we accepted the insurers' view of § 455(a). Suppose a judge's child sold dry goods to a litigant; nothing in the insurers' view depends on the child's status as a lawyer. A judge's relatives may engage in commercial transactions of one kind or another with large numbers of persons embroiled in litigation. The risk to the impartiality of the judge is too small, and the risk of manipulation by litigants too large, to treat parent and child as one. A judge who cannot be expected to remain impartial through trivial matters such as this should not be sitting even when his family is unaffected.

## II

The Advisory Committee on Codes of Conduct took a different view. It concluded that a judge who solicits advice

---

* The insurers rely on *Hoke v. Charlotte–Mecklenburg Hospital Authority, Inc.*, 550 F.Supp. 1276 (W.D.N.C.1982), in which the judge recused himself because his son once represented one of the parties in unrelated litigation. The judge remarked that he had "some trouble following the theory that my son's temporary representation" of the party "shows lack of impartiality on my part." *Id.* at 1278. He recused himself only in order to "lean[ ] over backwards to avoid the possible appearance of unfairness". *Ibid.* We have "some trouble following the theory" of "possible appearance of unfairness". There ei-

ther is or is not an appearance of impropriety; a "possible appearance"—an appearance of appearance of impropriety?—is not a basis for disqualification. *New York City Housing Development Corp.* disposes of the contention that a judge should or even may bend over backwards, disqualifying himself whenever a party expresses dissatisfaction about his service in the case. See also *Diversifoods, Inc. v. Diversifoods, Inc.*, 595 F.Supp. 133 (N.D.Ill.1984) (that the judge's husband's law firm represents a party on matters other than the one in litigation is not a ground of disqualification).

from counsel must stand aside if counsel objects, even though judicial service does not present an appearance of impropriety. Despite our respect for the Committee's expertise on this subject, we do not agree. The Committee reasoned that if the judge asks for a "remittal of disqualification" under Canon 3D (and presumably a waiver under § 455(e)), it must follow that there is an appearance of partiality, disqualifying the judge under § 455(a). Why else did he ask? If the lawyers say no, then the judge must follow through on the premise of the request. Perhaps; we express no view on the treatment of formal requests for waiver of disqualification. Judge Shadur did not seek one. He informed counsel that he had an open mind on the effect of § 455(a) and sought not remittal of disqualification but "observations of counsel" to ensure that he considered everything he should.

■ Such a procedure does not imply anything about the effect of the "observations". If any negative comment required the judge to recuse himself, that would be equivalent to giving a litigant a peremptory challenge against the judge. *New York City Housing Development Corp.*, 796 F.2d at 980–81, holds that § 455(a) does not grant litigants such a privilege. The Committee observed that the insurers' identification of their response to Judge Shadur's invitation put them in a difficult position. As Judge Shadur properly replied, this was the insurers' choice, which put them in no worse a position than they would have occupied had Judge Shadur simply spread on the record his son's engagement and waited for the insurers to make the first move. A motion for recusal, in which the party necessarily identifies itself, does not put the judge in a Catch–22—one in which if the judge thinks he is (so far) perceived as impartial and so should deny the motion he must then grant it, because denial would create antagonism between litigant and judge and yield a fear of reprisal for filing the motion; while if he believes he should grant the motion he must deny it, because a grant would show that he is not biased against the litigant and therefore need not step aside.

■ Judges should refrain from asking for the views of counsel on these questions. Resolution L of the Judicial Conference, to which the Committee referred, provides (emphasis added):

> In all cases involving actual, potential, probable *or possible* conflicts of interests, a federal judge should reach his own determination as to whether he should recuse himself from a particular case, *without calling upon counsel* to express their views as to the desirability of his remaining in the case. The too frequent practice of advising counsel of a possible conflict, and asking counsel to indicate their approval of a judge's remaining in a particular case is fraught with potential coercive elements which make this practice undesirable.

Judge Shadur did not call on counsel to "indicate their approval of" his remaining in the case or even ask for their "views as to the desirability of his remaining in the case"; he asked only for their views about what he should consider. This is a fine line, however; views about what does and does not matter, and about the law on the subject, usually imply a conclusion about whether the judge should be in or out. The promise of anonymity does not necessarily help. Sometimes details in the response are a tipoff (no one would have mistaken Continental's reply, no matter how much greasepaint was applied). The best practice is to disclose the details that the judge deems significant, to make a decision by one's own lights, and let counsel speak or keep silence as they will.

■ Any transgression against the policies underlying Resolution L is not itself a ground of disqualification, though. Judge Shadur did not try to bulldoze counsel into "approving" his continued participation in the case, and counsel did not respond sheepishly. The insurers' objection is functionally a motion for recusal under § 455; Judge Shadur treated it that way and denied it. The insurers are no worse for wear.

### III

■ Relations between Judge Shadur and Keck, Mahin & Cate are strained,

which is regrettable. He reacted with asperity to the belated petition for mandamus and should consider whether he continues to believe he will be perceived as impartial. Visible annoyance is no reason for recusal, however, not unless we wish to encourage efforts to get under judges' skin. Ever since Judge Shadur was assigned to this case, the insurers' lawyers have been looking for ways to get rid of him. They sent him several requests for information to lay the groundwork for a motion for recusal, turning up tidbits such as: "prior to 1962, Judge Shadur's former law firm had its office in the Continental Bank Building and leased its space from Continental Bank" (Petition for Mandamus 7 n. 5). When Judge Shadur inquired in 1986 about the ethical implications of the representation of one defendant by Freeman, Freeman & Saltzman—a firm representing a defendant in a suit by a close corporation in which Judge Shadur has a substantial interest—the insurers' counsel took the position that he was disqualified, although the Freeman firm itself saw no prospect of partiality. Then they disregarded Judge Shadur's request for anonymous responses to his inquiry in 1987, took the position that he was disqualified, yet waited a long time to file a petition for mandamus. Even the most placid judge would get irritated.

SCA Services holds, 557 F.2d at 117, that delay in seeking a judge's removal does not forfeit the litigant's entitlement to this relief. We pointed out in Murphy, 768 F.2d at 1539, that other courts of appeals have reached the opposite conclusion, and we raised the question whether SCA Services should be reconsidered. The parties opposing Judge Shadur's disqualification ask us to reject the petition as untimely. Because we have rejected it on the merits, we need not revisit SCA Services. A case like this shows, however, the substantial costs to the administration of justice that could be caused by delay in pursuing claims under § 455(a). Court and counsel did a great deal of work on this case from April through December 1987; Judge Shadur issued eight published opinions during those months; it would be a terrible waste to do it all over. Counsel for the parties oppos-

ing the petition for mandamus suspect that the insurers waited to see how Judge Shadur would rule on several substantive questions before deciding whether to seek his removal. The Keck firm's reply that during two months the parties were trying to settle the case explains only some of the delay. Counsel who perceive a problem under § 455(a) must not tarry, for delay imposes heavy costs on other litigants and the judicial system.

The petition for a writ of mandamus is denied.