United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-3082

Ken Jenkins, Jr., and Kimberly     *
Jenkins,                                 *
                                     *
              Appellants,         *
                                     *
      v.                                  * Appeal from the United States
                                    * District Court for the Western
Arkansas Power & Light Company,   * District of Arkansas
                                     *
             Appellee.          *

_____

Submitted: March 11, 1998

Filed: April 9, 1998
_____

Before BOWMAN and FLOYD R. GIBSON, Circuit Judges, and NANGLE,[1] Senior District Judge.

_____

NANGLE, Senior District Judge.

    Ken Jenkins, Jr. and Kimberly Jenkins appeal the district court's[2] grant of summary judgment to appellee after a mistrial, the district court's denial of appellants' motion for summary judgment, the district court's denial of appellant's motion for recusal and renewed motion for recusal and the district court's exclusion of the testimony of appellants' expert witness.  We affirm.

## I. BACKGROUND

    On the night of September 2, 1995, Ken Jenkins, Jr. dove into Lake Hamilton in Garland County, Arkansas and hit a submerged island.  As a result, he suffered a burst fracture to his neck, rendering him a full quadriplegic.  Appellee, Arkansas Power & Light, ("APL"), owns Lake

_____

[1]   The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]   The HONORABLE JIMM LARRY HENDREN, United States District Judge for the Western District of Arkansas.

Hamilton. Lake Hamilton is a reservoir operated by the Federal Energy Regulatory Commission and was created for the purpose of producing hydroelectric power for APL. The lake is open to the public pursuant to its Project 271 license from the Federal Energy Regulatory Commission. Ken Jenkins, a resident of Texas and pilot with Lone Star Airlines, had been to Lake Hamilton the week prior to the accident with several others to swim and boat. Jenkins alleges he swam in roughly the same area the prior week and found the water to be at least 15 to 20 feet deep. The day of the accident Jenkins and several others went out on a pontoon boat to swim in what they believed was deep water. Jenkins dove in the water before he or anyone else had actually gotten in the water to check its depth. The submerged island is located in an open body of water, roughly 400 yards from the nearest shoreline, in what appears to be a deep part of the lake.

Tom Gibbons owned a home on the shore of Lake Hamilton and he witnessed the accident through a pair of binoculars and called 911 before the boat reached the shore. Gibbons was aware of the presence of the submerged island because he had witnessed numerous boats strike the island in the past. Prior to the accident, Gibbons had contacted APL because he was concerned about the danger of the submerged island and inquired about marking the area. APL did not respond. Corporal Bob Charlesworth of the Garland County Sheriff's Department had marked the island with buoys once or twice before the accident, but the buoys disappeared. An employee of APL, Bobby Pharr, assisted Corporal Charlesworth in placing these buoys. After the buoys disappeared, APL did nothing to mark the area. After the accident, Gibbons took it upon himself to plant two trees on the island which protrude above the water line and he placed some floating milk jug buoys. He also erected a metal post and sign that states, "Warning: Cable buried" to try to keep people away from the area. Gibbons testified that this has effectively kept most people away and he has only seen one boat run across the island since the accident.

Jenkins filed this suit on February 29, 1996, alleging negligence in defendant's failure to mark the submerged island and failure to warn the public about the presence of the island. Both plaintiffs and defendant filed motions for summary judgment, but the court allowed the case to go to trial. Before the court ruled on the motions for summary judgment, plaintiffs filed a motion for recusal asserting that the Judge's son had become a new associate at defendant's law firm. The court denied the motion. Plaintiffs filed a renewed motion for recusal which was also denied. After the jury could not reach a verdict, the court declared a mistrial. The case was set for retrial, but defendant filed a motion for reconsideration of its motion for summary judgment, which was granted by the court on June 30, 1997.

## II.  ANALYSIS

### A.  Summary Judgment for Appellee.

We review the district court's grant of summary judgment de novo. See Excalibur Group, Inc. v. City of Minneapolis, 116 F.3d 1216, 1219 (8th Cir. 1997).  Summary judgment is only appropriate when the record demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law after viewing the facts and inferences in the light most favorable to the nonmoving party.  See Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Appellants argue that the court erred in granting summary judgment because issues of material fact existed on whether the submerged island was an ultra-hazardous condition and whether defendant maliciously failed to warn that the area was shallow.  Appellants allege there was sufficient evidence presented for a reasonable jury to conclude that appellee knew of the danger and failed to warn the public about it.  Such knowledge, appellants argue, coupled with inaction is malicious.  A reasonable jury could have also concluded that the submerged island in the middle of the lake was ultra-hazardous.  Alternatively, appellants argue that the court erred in applying the recreational use statute at all because the purpose of the statute would be thwarted by its application to appellee.  Appellant argues the statute shouldn't apply because the goal of the statute is to encourage landowners to open their land for public access through immunity from suit.  Appellant reasons that because appellee was required to open the lake to the public, the purpose of encouraging landowners to open their land would not be served by applying the statute.

Our analysis necessarily begins with the Arkansas Recreational Use Statute which provides that:

> Except as specifically recognized by or provided in § 18-11-307, an owner of land who, either directly or indirectly, invites or permits without charge any person to use his property for recreational purposes does not thereby:
>
> (1) Extend any assurance that the land or premises are safe for any            purpose;
> (2) Confer upon the person the legal status of an invitee or licensee to            whom a duty of care is owed;
> (3) Assume responsibility for or incur liability for injury to the person or            property caused by an act or omission of such persons;

(4) Assume responsibility for or incur liability for injury to the person or property caused by any natural or artificial condition, structure, or personal property on the land.

Ark. Code Ann. § 18-11-305 (West, WESTLAW through 1997 Reg. Sess.). The exception to the statute states:

> Nothing in this subchapter limits in any way liability which otherwise exists:
>
> (1) For malicious, but not mere negligent, failure to guard or warn against an ultra-hazardous condition, structure, personal property, use, or activity actually known to the owner to be dangerous; . . .

Ark. Code Ann. § 18-11-307 (West, WESTLAW through 1997 Reg. Sess.). The statute defines "land" to include water and watercourses. The plain language of the statute makes clear that the statute applies in the present case because appellee is an owner of land.

The district court granted summary judgment to appellee holding that the recreational use statute did apply making defendant immune from liability. It further held that the exception to the statute did not apply because appellant had not presented evidence that the shallow area was ultra-hazardous or that defendant's failure to warn was malicious. The court reasoned that shallow areas cannot be ultra-hazardous because they are only dangerous if one dives head first into them but not if one wades into them. Further, any failure to warn was mere negligence and certainly not malicious.

In Mandel v. United States, 719 F.2d 963 (8th Cir. 1983), we reversed the grant of summary judgment to defendants and held that there were genuine issues of material fact as to whether defendant's conduct was malicious under the exception to the Arkansas Recreational Use Statute. In Mandel, plaintiff was injured when he dove into water and hit his head on a submerged rock in the Buffalo River. Testimony had established that the plaintiff had asked a National Park Ranger where he should swim and the Ranger told him exactly where to go to swim. Further, testimony established that defendant knew about the danger of submerged rocks and warned about them in their literature, but the Ranger did not warn plaintiff. The statute then in effect, however, only required a showing that the condition was dangerous. The statute now requires the condition to be ultra-hazardous. The present case is sufficiently different from Mandel because appellant was not advised by appellee on where to swim and the statute's language has become stricter.

In Roten v. United States, 850 F. Supp. 786 (W.D. Ark. 1994), the district court held that plaintiff had not shown that defendant failed to

-4-

warn against an ultra-hazardous condition in a case where plaintiff had fallen off a bluff in the White Rock Mountain recreation area. The White Rock area provides unrestricted access to high cliffs where there are generally no guard rails. There is one warning sign. Plaintiff fell at night when he was walking too close to the edge. The court reasoned that the high cliffs were not an ultra-hazardous condition which required defendant to warn because they were an obvious source of danger. Id. at 793. Given the obvious nature of the danger of walking near the edge of a cliff at night, the court held that any failure to warn was merely negligent. Id. In the present case, there is an obvious danger associated with diving into water at night when one has not tested the water to see how deep it is and therefore the shallow area cannot be considered an ultra-hazardous condition in and of itself which requires a warning.

In Carlton v. Cleburne County, Arkansas, 93 F.3d 505 (8th Cir. 1996), we affirmed a grant of summary judgment to defendant holding there was no evidence defendant maliciously failed to warn of an ultra-hazardous condition in a case where a bridge collapsed. We held that although there had been evidence presented that defendants knew the bridge was deteriorating, there was not sufficient evidence to show maliciousness. Id. at 511. We reasoned that there was no evidence defendants knew the bridge was about to collapse and in fact the bridge had been examined by engineers and declared sound. Further, the collapse of the bridge was an unforeseen occurrence and so a failure to warn against it occurring could not be malicious. Id. at 511. In the present case, appellees could not have foreseen that appellant would dive into the water without checking it first because a reasonable person would check the depth of water before diving into it. Appellee's failure to warn, therefore, is, negligent at most.

**B. Motion to Recuse.**

We review the denial of a motion to recuse for abuse of discretion. See In re Kansas Public Employees Retirement Sys., 85 F.3d 1353, 1358 (8th Cir. 1996). Appellants argue the district court abused its discretion when it refused to recuse itself because the judge's son had accepted an associate's position (contingent upon his graduation and successful passing of the bar exam) in the law firm that was representing appellee. This situation, appellants allege, created the appearance of impropriety because a reasonable person would question the judge's impartiality. Under 28 U.S.C. § 455(b)(5)(iii), a judge must disqualify himself if a person with whom he has a relationship in the third degree has an interest that could be substantially affected by the outcome of the proceeding. Appellants argue this was such a case.

A judge must disqualify himself if "a person within the third degree of relationship to [the judge], or the spouse of such a person . . . [i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5). In In re Kansas, this Court held that "an employment relationship between a party and a judge's son or daughter does not *per se* necessitate a judge's disqualification." 85 F.3d at 1364 (citations omitted). We reasoned that although the judge's daughter had accepted an offer of employment from a law firm involved in the litigation, the judge was not required to recuse himself because (1) she was not presently involved in the litigation; (2) her employment would not ripen until sometime in the future during which time much could change; and (3) she would be a salaried associate and as such could not be substantially affected by the outcome of the case. Id. The present case is factually similar to In re Kansas in that the Judge's son's was not involved in the litigation and his employment did not begin until sometime in the future and was contingent upon his graduating from law school and passing the bar. In addition, his son would be a salaried associate who would not be substantially affected by the outcome of the case. The district court did not abuse its discretion in denying the motion to recuse and the renewed motion to recuse.

## C. Exclusion of Appellants' Expert Witness.

Decisions concerning the admissibility of expert testimony "lie within the broad discretion of the trial court" and will not be reversed on appeal unless there has been an abuse of that discretion. See Peitzmeier v. Hennessy, 97 F.3d 293, 296 (8th Cir. 1996). Appellants argue that it was an abuse of discretion for the court to exclude the testimony of their purported expert. Appellants offered the testimony of Terence J. Connell claiming he had specialized expertise on the issues of proper reservoir management as it relates to the safety of recreational users of the reservoir. Mr. Connell is a graduate of the U.S. Military Academy and has 27 years of experience as a commissioned officer in the U.S. Army Corps of Engineers. He was at the executive level responsible for major civil works Corps of Engineers reservoirs. Appellants allege that his testimony would have assisted the trier of fact in determining what actions could have been properly undertaken by appellee with regard to the shallow area.

Federal Rule of Evidence 702 provides that expert testimony may be admitted if it "will assist the trier of fact to understand the evidence or to determine a fact in issue" and if the witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The court determined that there was no need for expert testimony and that Connell was not qualified as an expert. Connell indicated that he would testify about four issues. First, he stated that

he would testify based on his experience in regards to appellee's federal duties and responsibilities. The court correctly determined that this was an issue of law which was properly for the court to determine. Second, Connell stated he would testify as to what actually happened the night of the accident in regards to what might have prevented the accident. The court properly determined that expert testimony was unnecessary because an eyewitness had seen the entire thing through binoculars and because the facts were not complex enough to require an expert. In addition, the court determined that Connell was not an expert in the placement of buoys, he had never investigated a diving accident and was not an accident reconstructionist.

Third, Connell stated he would testify about appellee's actions with regard to the shallow area. The court properly determined that this was an issue left for the jury. Fourth, Connell stated that he would testify as to his opinion on whether or not plaintiff was negligent in any way. Again the court properly determined that this was an issue for the jury. In addition, the court correctly ruled that Connell had no specialized knowledge on which to base this opinion, as he admitted his opinion was based on his own experience growing up in Michigan and swimming with his brothers. Although the standards for admission of expert testimony are liberal, the court did not abuse its discretion in excluding this testimony. The court correctly determined that expert testimony was not required and further that Connell was not an expert in anything. Connell had never been admitted as an expert in any court and had not had anything beyond general experience with accidents of this type.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-