153 F.3d 520
 SOUTHWESTERN BELL TELEPHONE COMPANY; Petitioner,
Southern New England Telephone Company; Texas Office of
Public Utility Counsel; United States Telephone
Association; Ameritech Corporation; U S West, Inc.; Rural
Telephone Coalition; Cincinnati Bell Telephone Company;
GTE Service Corporation; GTE Alaska, Incorporated; GTE
Arkansas Incorporated; GTE California, Incorporated; GTE
Florida, Incorporated; GTE Midwest, Incorporated; GTE
South, Incorporated; GTE Southwest, Incorporated; GTE
North, Incorporated; GTE Hawaiian Telephone Company,
Incorporated; GTE West Coast, Incorporated; Contel of
Minnesota, Inc.; Contel of the South, Inc.; Missouri
Public Service Commission; GTE Northwest, Incorporated;
Pacific Bell; Nevada Bell, Intervenors on Appeal.
v.
FEDERAL COMMUNICATIONS COMMISSION; United States of
America, Respondents.
Association for Local Telecommunications Services; American
Telephone and Telegraph Company; Telecommunications
Resellers Association; The Competition Policy Institute;
Information Technology Association of America; National
Cable Television Association, Inc.; Internet Access
Coalition; Ad Hoc Telecommunications Users Committee;
Worldcom, Inc.; Sprint Corporation; Telco Communications
Group, Inc.; Excel Telecommunications, Inc.; Bell Atlantic
Telephone Companies; Time Warner Communications Holdings,
Inc.; MCI Telecommunications Corporation; NY Telephone;
New England Telephone and Telegraph Company, Intervenors on Appeal.
America's Carriers Telecommunication Association,
Intervenors on Appeal,
Commercial Internet Exchange Association, Amicus Curiae.
SOUTHWESTERN BELL TELEPHONE COMPANY; Petitioner,
Ameritech Corporation; Time Warner Communications Holdings;
US Telephone Association; GTE Service Corporation; GTE
Alaska, Incorporated; GTE Arkansas, Incorporated; GTE
California, Incorporated; GTE Florida, Incorporated; GTE
Midwest, Incorporated; GTE South, Incorporated; GTE
Southwest, Incorporated; Benjamin Wayne McCoin, Inc.; GTE
Northwest, Incorporated; GTE Hawaiian Telephone Company,
Incorporated; GTE West Coast, Incorporated; Contel of
Minnesota, Inc.; Contel of the South, Inc.; Association
for Local Telecommunications Services; Bell
Atlantic-Maryland, Inc.; Bell Atlantic-Washington, D.C.,
Inc.; Bell Atlantic-West Virginia, Inc.; Bell Atlantic-New
Jersey, Inc.; Bell Atlantic-Delaware, Inc.; Bell
Atlantic-Pennsylvania, Inc.; Bell Atlantic-Virginia, Inc.;
New York Telephone Company; New England Telephone and
Telegraph Company; Independent Telephone and
Telecommunications Alliance, Intervenors on Appeal.
v.
FEDERAL COMMUNICATIONS COMMISSION; United States of
America, Respondents.
American Telephone and Telegraph Company;
Telecommunications Resellers Association; MCI
Telecommunications Corporation, LBC Communications, Inc.;
Worldcom, Inc.; Competitive Telecommunications Association,
Intervenors on Appeal.
 Nos. 97-2618, 97-2661, 97-2856, 97-2866, 97-2873, 97-2875,
97-2877, 97-3012, 97-3271, 97-3272, 97-3274,
97-3477, 97-3557, 97-3720, 97-3389,
97-3576, 97-3663 and 97-4106.
 United States Court of Appeals,
Eighth Circuit.
 June 5, 1998.
 
 1
 Michael K. Kellogg, Washington, DC, argued, for Bell South.
 
 
 2
 Mark L. Evans, Washington, DC, argued, Richard G. Taranto, Washington, DC, argued, for Bell Atlantic.
 
 
 3
 Nory Miller, Washington, DC, argued, for MCI.
 
 
 4
 Danny E. Adams, Washington, DC, argued, for LCI.
 
 
 5
 Martha S. Hogerty, Jefferson City, MO, argued, for State Consumers.
 
 
 6
 Rick Guzman, Austin, TX, argued, for Texas Public Utilities.
 
 
 7
 Laurence N. Bourne and John E. Ingle, Washington, DC, argued, for FCC.
 
 
 8
 Gene C. Schaerr, Washington, DC, argued, for AT&T.
 
 
 9
 Jonathan J. Nadler, Washington, DC, argued, for Information Technology Association.
 
 
 10
 MEMORANDUM CONCERNING POTENTIAL RECUSAL AND NOTICE OF DECISION
 
 
 11
 HANSEN, Circuit Judge, in Chambers.
 
 
 12
 My son, age 23, having recently completed a major in computer science at Cornell College, has accepted a position as an entry-level computer programmer with MCI Telecommunications Corporation (MCI), one of the named intervenors in these cases, to begin work on June 8, 1998. I place this matter of record because it is the fundamental ethical duty of every judge to police his or her own disqualification status. See Tramonte v. Chrysler Corp., 136 F.3d 1025, 1031 (5th Cir.1998).[1] Having considered the relevant facts and applicable law, I conclude that my son's employment status with MCI neither requires nor permits me to recuse myself from these cases.
 
 
 13
 Pursuant to 28 U.S.C. § 455(b)(5) (1994), a United States judge must recuse himself if "a person within the third degree of relationship to [the judge] ... [i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding[.]" More generally, 28 U.S.C. § 455(a) requires a federal judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."
 
 
 14
 Our court's precedents make clear that "an employment relationship between a party and a judge's son or daughter does not per se necessitate a judge's disqualification." In re Kansas Pub. Employees Retirement Sys., 85 F.3d 1353, 1364 (8th Cir.1996) (In re KPERS); see also Jenkins v. Arkansas Power & Light Co., 140 F.3d 1161, 1164-65 (8th Cir.1998) (quoting In re KPERS). "Rather, the determination of whether a conflict exists in a given situation is factually bound." In re KPERS, 85 F.3d at 1364. Therefore, I look to the particular facts to help determine whether recusal is merited.
 
 
 15
 In In re KPERS, our court was faced with a district judge's decision not to recuse himself when his daughter accepted an employment offer from a law firm which represented a party in the action before him. Noting that the judge's daughter was not personally involved in the litigation before him, and that as a salaried associate with traditional employee benefits she could not be substantially affected by the outcome of the case, our court affirmed the district judge's decision not to recuse himself. See 85 F.3d at 1364. In Jenkins, decided in April of this year, our court reaffirmed both the holding and the logic of In re KPERS. See 140 F.3d 1161, 1164. Our resolution of these cases accords with the decisions of our sister circuits. See, e.g., Bartholomew v. Stassi-Lampman, 95 F.3d 1156 (9th Cir.1996) (unpublished) (recusal not required where judge's child is a salaried associate with law firm representing a party, as long as child does not actively participate in case); United States ex rel Weinberger v. Equifax, Inc., 557 F.2d 456, 463-64 (5th Cir.1977) (same), cert. denied, 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); Benko v. Judges' Retirement Sys., No. 97-1241, 1998 WL 199798, at * 4 (6th Cir. Apr. 15, 1998) (unpublished) (recusal not required where judge's daughter was employed by the state attorney general's office which represented a party, because daughter was not involved in litigation); In re National Union Fire Ins. Co., 839 F.2d 1226, 1229-30 (7th Cir.1988) (recusal not required where party has retained judge's son to represent it in an unrelated matter); cf. Hunt v. American Bank & Trust Co. of Baton Rouge, 783 F.2d 1011, 1016 (11th Cir.1986) (recusal not required where judge's law clerk has accepted offer of future employment with law firm representing a party to the case, as long as law clerk does not personally work on the case).
 
 
 16
 Nor is recusal automatically required where the judge's child is employed by a party to the dispute. See Datagate, Inc. v. Hewlett-Packard Co., 941 F.2d 864, 871 (9th Cir.1991), cert. denied, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 882 F.2d 1556, 1568 (Fed.Cir.1989), cert. denied, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990). Both Datagate and Bausch & Lomb involved a judge whose son was a long-term employee of Hewlett-Packard, a party to both actions. In Bausch & Lomb, the Federal Circuit noted that Hewlett-Packard employed over 83,000 employees and that the judge's son occupied a nonmanagement position without a policy-making role. 882 F.2d at 1569. The court concluded that although the son participated in a company profit-sharing plan, neither his financial interest nor his employment status would be affected by the resolution of the litigation before his father. Id. The Ninth Circuit resolved the same issue identically in Datagate, 941 F.2d at 871 (citing Bausch & Lomb). This court cited both Bausch & Lomb and Datagate favorably in In re KPERS. See 85 F.3d at 1364.
 
 
 17
 My situation is very analogous to that discussed by the Ninth and Federal Circuits in Datagate and Bausch & Lomb. MCI publicly asserts that it employs roughly 55,000 workers in at least 66 different nations and serves over 20 million customers, including 30 of the nation's 100 largest companies.[2] My son's position is nonmanagement and involves no policy role. Rather, he has been hired as an entry-level computer programmer stationed in Cedar Rapids, Iowa. His work will be far removed from this litigation, and as a salaried employee, his interest in the outcome of these cases cannot be deemed "substantial." Nor do I believe that "a reasonable person knowing and understanding all the relevant facts ... [would] conclude that I should recuse myself." McCann v. Communications Design Corp., 775 F.Supp. 1506, 1533 n. 26 (D.Conn.1991) (Cabranes, J.) (explicating § 455(a)); accord In re National Union Fire Ins. Co., 839 F.2d at 1229 ("the appropriate inquiry under § 455(a) is whether an informed, reasonable observer would doubt the judge's impartiality."). As Judge Easterbrook aptly concluded when faced with a similar situation:
 
 
 18
 A judge's relatives may engage in commercial transactions of one kind or another with large numbers of persons embroiled in litigation. The risk to the impartiality of the judge is too small, and the risk of manipulation by litigants too large, to treat parent and child as one. A judge who cannot be expected to remain impartial through trivial matters such as this should not be sitting even when his family is unaffected.
 
 
 19
 In re National Union Fire Ins. Co., 839 F.2d at 1230 (holding that recusal is not required where judge's son has been retained to represent a party on an unrelated matter).
 
 
 20
 Accordingly, I conclude that my son's employment status with MCI does not require my recusal under either section 455(a) or section 455(b)(5). Because the rules do not require my recusal, I am obliged to remain on the panel. See, e.g., In re National Union Fire Ins. Co., 839 F.2d at 1229 ("Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping.") (citation omitted); Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir.1987) ("There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."); In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir.1988) ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."), cert. denied, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). In short, I will continue to sit as a member of the court on these cases.
 
 
 
 [1]
 In keeping with Resolution G of the Judicial Conference of the United States, I reach my own determination as to whether I should recuse. October 1971 Conf. Rep., at 68-69 ("In all cases involving actual, potential, probable, or possible conflicts of interest, a federal judge should reach his own determination as to whether he should recuse himself from a particular case, without calling upon counsel to express their views as to the desirability of his remaining in the case.")
 
 
 [2]
 See MCI 1996 Annual Report, published online at . According to MCI's financial records, MCI's gross revenues topped 18 billion dollars in 1996, and its total assets exceeded 22 billion dollars. Id