In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-3222

MAURICE J. SALEM,

*Plaintiff-Appellant,*

*v.*

ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION OF
THE SUPREME COURT OF ILLINOIS and JEROME LARKIN, its Ad-
ministrator, in official and individual capacities,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20-CV-06531 — **John J. Tharp, Jr.**, *Judge.*

———————————

ARGUED SEPTEMBER 21, 2023 — DECIDED SEPTEMBER 28, 2023

———————————

Before EASTERBROOK, ROVNER, and PRYOR, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 2003 Maurice J. Salem re-
ceived a license to practice law in New York. He applied for
admission in Illinois too but was turned down. Yet between
2004 and 2019 he maintained an active practice in Illinois,
where he resides, through permission to appear *pro hac vice*—

Latin meaning "for this event" or "on this occasion"—based
on his license to practice in New York. The Attorney Registra-
tion and Disciplinary Commission charged him with miscon-
duct for representing that he was licensed to practice law in
Illinois. A hearing board received evidence, found that he had
made such a representation inadvertently, and recommended
censure. A review board agreed. But Jerome Larkin, the
ARDC's Administrator, asked the Supreme Court of Illinois
to go further and forbid any state court from allowing Salem
to proceed *pro hac vice* for at least 90 days.

Larkin argued that Salem's representation had been a de-
liberate attempt to mislead. The Supreme Court of Illinois
likely agreed with that view, because it imposed the discipline
Larkin sought—though it did not issue an opinion. The
court's order states:

> Petition by the Administrator of the Attorney Registration and
> Disciplinary Commission for leave to file exceptions to the report
> and recommendation of the Review Board. <u>Allowed</u>. Respondent
> Maurice James Salem is suspended from the practice of law for
> ninety (90) days and until further order of the Court.

Salem, who now asks the federal judiciary to disagree with
the state court's disposition, did not do himself any favors
when he ignored the petition and allowed Larkin's arguments
to go unanswered in the state's highest court. The lack of op-
position may explain the court's belief that it did not need to
write an opinion resolving a contested matter.

Salem's federal suit, based on 42 U.S.C. §1983, asks for
money damages to compensate him for both the suspension
order (which remains in force) and how the ARDC has de-
scribed that suspension. Its website states:

> Mr. Salem is licensed in New York but was never licensed in Illinois. He has, however, maintained a law office in Cook County, Illinois, for several years. The Supreme Court of Illinois suspended him for ninety days and until further order of the Court for dishonestly holding himself out to the public as an Illinois lawyer.

Salem contends that the word "dishonestly" in this description is false and maintains that principles of equal protection and substantive due process entitle him to relief. He does not present any claim under state tort law, nor has he asked a state court to direct the ARDC to change the website's language.

The federal suit did not go well for Salem. The judge dismissed it on the pleadings, ruling that the district court lacks jurisdiction to review the state Supreme Court's decision and that the state court's decision supplies all the basis needed for the ARDC's choice of language. 2022 U.S. Dist. LEXIS 212408 (N.D. Ill. Nov. 23, 2022).

Salem devotes the bulk of his appellate brief to contending that the federal district judge in Illinois should not have resolved the suit that Salem himself filed in Illinois. According to Salem, every district judge in Illinois is disqualified because he or she has a law license and so is potentially subject to the authority that the Supreme Court of Illinois and its agency the ARDC exercise over the bar. Salem proposed that the judge "transfer venue" to Michigan to put it before a federal judge who does not have any potential conflict.

A statute, 28 U.S.C. §1404(a), permits a district court to change venue "to any other district or division where it might have been brought or to any district or division to which all parties have consented." The ARDC and Larkin have not consented to litigate this suit in Michigan, and Illinois is the only

state in which "it might have been brought". The ARDC is part of the state of Illinois; it does not do business in Michigan and has never had dealings with Salem there. Salem, who does not mention §1404 in his opening brief (and does not discuss the relevant language in his reply brief), lacks any legal support for the proposition that a district judge can order the ARDC to defend itself in Michigan.

Apparently Salem believes that a disqualified district judge can send the litigation anywhere. He does not supply either authority or argument for this novel proposition. He did not bother to do the legal research to discover how federal courts proceed when all of a district's judges are disqualified. When none of the judges is available, the Chief Judge of the Court of Appeals will designate a judge from another district within the circuit to resolve the case. 28 U.S.C. §292(b). If every judge in the circuit is disqualified, the Chief Justice of the United States can designate a judge from outside the circuit. 28 U.S.C. §292(d). In neither event will a disqualified district judge "transfer venue" as Salem proposes.

So we must ask: are all district judges in Illinois disqualified? The answer is no. Although a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned", 28 U.S.C. §455(a), the impartiality of the district judges in Illinois cannot be questioned "reasonably" in a case of this nature. The standard is objective, assessed from the perspective of an observer who possesses all material facts. *Liteky v. United States*, 510 U.S. 540, 548 (1994); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988); *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016); *In re National Union Fire Insurance Co.*, 839 F.2d 1226, 1228–29 (7th Cir. 1988). And the first material fact that any reasonable

observer will possess is that federal judges do not need law licenses. They hold office by virtue of the President's appointment (following advice and consent of the Senate), not by virtue of anything any state does. As far as the Constitution is concerned, law licenses are unnecessary—indeed, the Constitution was adopted long before states began to license the practice of law. (Until the twentieth century, most legal practice was court-specific rather than a privilege conferred by a state-issued license. See Benjamin H. Barton, *An Institutional Analysis of Lawyer Regulation: Who Should Control Lawyer Regulation—Courts, Legislatures, or the Market?*, 37 Ga. L. Rev. 1167, 1172 & n.17 (2003).)

We appreciate that some federal judges may want to retain law licenses should they decide to return to practice. Perhaps such a judge's impartiality could be questioned "reasonably" if a given state had developed a reputation for commencing disciplinary proceedings against judges who issue adverse rulings. But Salem does not contend that the ARDC ever has done so for any federal judge—and our own research did not turn up any example, though federal judges in Illinois (and in other states) regularly resolve suits in which state licensing officials are parties. A fully informed observer therefore would not believe that a federal judge would favor the state licensing officials to protect his own interests.

An informed observer also would know that none of the language in the Code of Conduct for United States Judges— or any of the advisory opinions issued under that Code—suggests that federal judges recuse in suits against officials responsible for the regulation of the state bar. Salem's argument to the contrary is unsupported. He does not cite any language in the Code of Conduct, any statute beyond §455, or any

judicial opinion holding that recusal is required in this circumstance. (Salem does mention §455(b)(1) as well as §455(a). Subsection (b)(1) is transparently irrelevant. It says that a judge is disqualified if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding". None of those things applies just because a judge is licensed to practice law.) It follows that the district judge is not disqualified.

Now for Salem's substantive contentions. The decision of the Supreme Court of Illinois suspending Salem from the practice of law cannot be collaterally attacked in civil litigation. It could have been reviewed by the Supreme Court of the United States but cannot be reviewed by a district court. That's the holding of *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which like this suit arose from a state court's order regulating its bar.

Salem contends that the *Rooker-Feldman* doctrine does not apply because he seeks damages from the ARDC and Larkin rather than an order setting aside the Supreme Court's decision. We need not decide when, if ever, a request for damages is outside the scope of the *Rooker-Feldman* doctrine, because the ARDC is a state agency and this suit rests on 42 U.S.C. §1983. States and their agencies are not "persons" for the purpose of §1983 and therefore cannot be sued for damages under that statute. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). State officials sued in their official capacities are treated as states. *Ibid*. Salem has sued Larkin in his personal as well as his official capacity, but Larkin cannot be personally liable for decisions made by the Supreme Court of Illinois.

This leaves the argument that the statement on the ARDC's website entitles Salem to damages. The fact that the

ARDC and Larkin in his official capacity are "the state" knocks out any §1983 damages remedy against them, but Larkin in his personal capacity might be deemed liable for the language to which Salem objects, for Larkin could tell his subordinates to change it. But liable under the Constitution? The word "dishonestly" is defamatory and could support a tort claim—to which Larkin could interpose the defense of truth or a privilege to report the Supreme Court's decision—but Salem does not invoke state law. He relies instead on equal protection and substantive due process.

Let us start with the latter. Substantive due process protects fundamental rights with deep historical provenance. See *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022); *Washington v. Glucksberg*, 521 U.S. 702 (1997). Freedom from being described as "dishonest" (or the equivalent) by a state actor is not a fundamental right. Indeed, we know from *Paul v. Davis*, 424 U.S. 693 (1976), that it is not a constitutional right of any kind.

Public officials distributed posters describing Davis as an "active shoplifter", and he sought a remedy under §1983. The Court held, however, that defamation is a subject for state tort law and does not deprive a person of either "liberty" or "property" for the purpose of the Due Process Clause in the Fourteenth Amendment. *Paul* added that stigma leading to the deprivation of some other interest, such as employment, might entail liberty or property and require a hearing—but Salem does not contend that the statement on the ARDC's site has caused such a loss. It is the decision by the Supreme Court of Illinois, not what the ARDC said about that decision, that ended Salem's opportunity to seek *pro hac vice* status. And Salem received a hearing before that judicial decision was

reached. (Salem also had but did not use an opportunity to present his arguments to the Supreme Court of Illinois.)

As for the equal-protection theory: Salem describes himself as a "class of one" who has been victimized by the ARDC's malice. This appears to be just artful pleading of a defamation theory, which is no sounder under the Equal Protection Clause than under the Due Process Clause. At all events, a rational basis suffices for public acts challenged under the Equal Protection Clause, see *Willowbrook v. Olech*, 528 U.S. 562 (2000), and we agree with the district judge that the decision of the Supreme Court of Illinois, read against the background of Larkin's application for Salem's suspension, supplies a rational basis for the ARDC's summary. In equal-protection law, it is enough if a rational basis may be *conceived*; the basis need not be proved by evidence. See, e.g., *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993); *National Paint & Coatings Association v. Chicago*, 45 F.3d 1124, 1127–28 (7th Cir. 1995). Conceiving a rational basis for calling Salem's conduct "dishonest" does not require mental gymnastics.

This has been frivolous and vexatious litigation, an attempt by a disappointed party to strike back at his adversaries after losing in court. The attempt was doomed by inattention to basic legal rules. Salem makes assertions about venue without analyzing the language of §1404, about how to handle recusals without mentioning §292, and about judicial ethics without mentioning the Code of Conduct. He seeks damages against a state agency and its administrator under §1983 without mentioning *Will*, relies on the Due Process Clause without mentioning *Paul*, and seeks a trial on an equal-protection theory without mentioning the rule that the rational-basis approach asks what is conceivable, not what a trier of fact

believes. In other words, Salem's contentions reflect ignorance of the law, indifference to the law, or both.

This is not the first time the federal judiciary has encountered inappropriate behavior from Salem. For example, in a defamation suit that Salem filed in federal court complaining about statements an expert witness made during other litigation, Salem described himself as a citizen of New York in an effort to support jurisdiction based on diversity of citizenship. A federal district judge concluded that Salem, who has lived in Illinois since 2003, was untruthful; we affirmed. *Salem v. Egan*, No. 19-2477 (7th Cir. Mar. 10, 2020) (nonprecedential disposition). In a similar case that a district court dismissed for want of jurisdiction, Salem promptly refiled in another district court, apparently believing that subject-matter jurisdiction is district-court specific. A district judge deemed this frivolous and ordered Salem to pay his adversary's legal fees. We affirmed, agreeing with the district judge that Salem's conduct was sanctionable. *Zausa v. Zausa* (*Pellin*), No. 18-1896 (7th Cir. Nov. 1, 2018) (nonprecedential disposition). The attorneys' fees awarded in *Pellin* remain unpaid.

Salem's preposterous arguments in a long-running bankruptcy proceeding so frustrated the bankruptcy judge that she barred him from continuing to represent any of the parties and fined him $20,000. The district court affirmed, as did we. *Estate of Wattar v. Fox*, 71 F.4th 547, 554–55 (7th Cir. 2023). The bankruptcy court imposed that fine years ago, but Salem has yet to pay even one dollar of the award.

The state courts of Illinois are not the only forum in which Salem's practice has been suspended. Following his suspension in state court, the Northern District of Illinois imposed reciprocal discipline. After receiving that suspension order,

Salem served discovery requests on opposing counsel in a pending case. That led to a complaint and discipline for unauthorized practice of law. (Salem asserted that he didn't know that serving discovery requests constitutes the practice of law. The court didn't believe him—nor was the excuse adequate even if Salem was as ignorant as he professed.) We have revoked his right to practice in the Seventh Circuit. And officials in New York, having learned what was happening, suspended Salem's right to practice there. *Matter of Salem*, 194 A.D.3d 20 (N.Y. 2021). That suspension remains in force. Upshot: Salem is not authorized to practice law in New York, in Illinois, in the Seventh Circuit, or in the Northern District of Illinois. But he continues to file pestiferous suits on his own behalf, of which this one is an example.

Salem's cavalcade of frivolous suits must stop. The sanctions imposed in *Estate of Wattar* and *Pellin* were designed to discourage frivolous litigation by making this conduct costly, but that does not work if Salem thumbs his nose at the court and fails to pay. Litigation can require hefty outlays from defendants, expenses that they should not be forced to bear unless a suit presents plausible claims. Salem must explain why additional sanctions—including attorneys' fees and financial penalties—should not be imposed in this case. He must understand that, unless he pays all outstanding fines and awards of fees, plus any additional award in this case, we will issue an order under *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir. 1995), that protects other persons by preventing him from filing or pursuing any civil suit until all outstanding awards have been satisfied.

The district court's judgment is affirmed. Salem has 14 days to show cause why he should not be subject to sanctions,

including an order to pay the defendants' attorneys' fees, under Fed. R. App. P. 38.