**UNITED STATES of America**

v.

**Edwin W. EDWARDS, et al.**

**No. Crim.A. 98–165–B–M2.**

United States District Court,
M.D. Louisiana.

Jan. 26, 1999.

---

Rebecca L. Hudsmith, Federal Public Defenders Office for Middle and Western Districts of LA, Lafayette, LA, for Cecil Brown, defendant.

Servando C. Garcia, III, Garcia & Bishop, Metairie, LA, for Andrew Martin, defendant.

Patrick Fanning, New Orleans, LA, for Bobby Johnson, defendant.

Mary Olive Pierson, Cooper & Pierson, Baton Rouge, LA, Camille F. Gravel, Jr., Alexandria, LA, James Michael Small, Law Offices of J. Michael Small, Alexandria, LA, Hillar C. Moore, III, Baton Rouge, LA, for Gregory Tarver, defendant.

James B. Letten, Peter G. Strasser, Department of Justice, U.S. Attorney's Office, New Orleans, LA, Michael William Magner, United States Attorney's Office, New Orleans, LA, Eddie J. Jordan, Jr., United States Attorney's Office, New Orleans, LA, for U.S.

## RULING ON DEFENDANTS' MOTION TO RECUSE

POLOZOLA, Chief Judge.

All defendants except Gregory Tarver have filed motions to recuse Chief Judge Frank J. Polozola and all of the other judges in the Middle District of Louisiana for various reasons. In a short memorandum ruling, the court denied the motions to recuse Judge Polozola and found the motions to recuse the other judges of the Middle District moot.[1] The court now assigns its reasons for denying the motions to recuse.[2]

### I. BACKGROUND

Two separate motions to recuse Judge Polozola were filed in this case. In one motion, Edwin W. Edwards, Stephen Edwards, Andrew Martin, Cecil Brown and Bobby Johnson filed a motion to recuse

Michael S. Fawer, Covington, LA, for Edwin Edwards, defendant.

Karl J. Koch, Unglesby & Koch, Baton Rouge, LA, Lewis O. Unglesby, Lewis O. Unglesby, Attorney at Law, Baton Rouge, LA, for Stephen Edwards, defendant.

1. See Rec.Doc. No. 57, issued December 18, 1998.

2. The Court also finds there is no need for an evidentiary hearing.

based on various grounds which will be discussed in detail hereinafter in this opinion.[3] In addition, Cecil Brown, Andrew Martin and Bobby Johnson have filed a separate motion to recuse on the additional ground that Judge Polozola's son is a member of the law firm representing Stephen Edwards.[4]

### A. Recusal Motion I

In this motion to recuse, the defendants have alleged a number of reasons in support of their motion to recuse this judge and the remaining judges of the district. A careful reading of this motion reveals the following basic grounds for my recusal:

1. The United States was involved in forum shopping.

2. The court's rulings and comments made in pre-indictment grand jury challenges and other jury challenges made by the *Edwards* defendants and defendants in *United States v. Phillips et al.*, Criminal Action No. 97–68 (M.D.La.).

3. The manner in which the cases involving the defendants who pled guilty in related cases were assigned.

4. This case was not randomly assigned which prevented the defendants from having an African–American judge to preside in their case.

5. This judge issued a "gag" order after the indictment was returned.

6. This judge has denied the defendants access to information in the clerk's office.

7. This judge previously held Michael Fawer in contempt in the *Phillips* case.

8. The "personalization" of the court's rulings on various issues.

---

3. This motion will sometimes be referred to as "Recusal Motion I."

4. This motion will sometimes be referred to as "Recusal Motion II."

The United States has filed an opposition to the defendants' motion. The United States contends that neither 28 U.S.C. § 455 nor the facts of this case require Judge Polozola to recuse himself in this case.

### B. Recusal Motion II

In Recusal Motion II, the defendants Brown, Martin and Johnson allege that Judge Polozola should recuse himself because his son is a member of the Kean, Miller law firm and allegedly will become a partner while this case is pending before the court. These defendants concede that mandatory recusal is not required if the judge's son is not a partner in the Kean, Miller firm, will not become a partner while the case is pending before me, and does not work on the case. The court ordered the Kean, Miller firm to set forth in writing the current and future status of Gordon D. Polozola with the firm. This statement was timely filed in the record and will be discussed below.[5]

The United States opposes this motion to recuse on the ground that Gordon Polozola's status as an associate in the Kean, Miller law firm does not require Judge Polozola's recusal.

### II. LEGAL STANDARD TO BE APPLIED

The starting point to decide the two pending motions to recuse is 28 U.S.C. § 455. The defendants basically rely on § 455(a) and § 455(b)(1) and (b)(5)(ii) to support their motions to recuse. These sections provide:

§ 455(a):

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

---

5. *See* Rec.Doc. No. 41. In addition, Charles McCowan, a partner in the Kean, Miller firm, set forth the same basic information contained in the firm's written response in open court on December 3, 1998.

§ 455(b)(1) and (b)(5)(ii):

He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

\*\*\*\*

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

\*\*\*

(ii) Is acting as a lawyer in the proceeding.

Thus, Section 455(a) requires a judge to stand recused in "any proceeding in which his impartiality might reasonably be questioned." Section 455(b)(1) requires a judge to disqualify himself where "he has a personal bias or prejudice concerning a party". Section 455(b)(5) requires a judge to disqualify himself if a "person within the third degree of relationship ... [i]s acting as a lawyer in the proceeding."

▆▆▆ The standard by which courts judge recusal is an objective one. If a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality," then recusal is warranted.[6] In *Liteky v. United States*,[7] the United States Supreme Court addressed the circumstances which would necessitate the recusal of a judge for "impartiality" pursuant to § 455(a), or for "bias or prejudice," pursuant to § 455(b)(1). One of the issues before the *Liteky* Court was whether the "extrajudicial source" doctrine applied to § 455(a). The "extrajudicial source" doctrine provides that matters arising **out of** the course of judi-

cial proceedings are not a proper basis for recusal.[8] The Supreme Court noted that the "extrajudicial source" doctrine is one application of the "pejorativeness requirement" to the terms "bias" and "prejudice" as they are used in § 455(a) and § 455(b)(1).[9] This requirement mandates that a judge be recused under § 455(b)(1) when his "judicial predispositions ... go beyond what is normal and acceptable,"[10] and under § 455(a) when his predisposition is "wrongful or inappropriate."[11] When explaining predispositions that a judge might possess, the Court noted:

It is enough for present purposes to say the following: First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

6. *Health Serv. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 800 (5th Cir.1986), *aff'd*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); see also *United States v. Landerman*, 109 F.3d 1053, 1066 (5th Cir.1997), citing *Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir.1993).

7. 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

8. *Liteky*, 510 U.S. at 554–55, 114 S.Ct. at 1157.

9. *Liteky*, 510 U.S. at 552, 114 S.Ct. at 1155–56.

10. *Liteky*, 510 U.S. at 552, 114 S.Ct. at 1155.

11. *Liteky*, 510 U.S. at 552, 114 S.Ct. at 1156.

They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.[12]

In affirming the lower court's denial of the motion to disqualify, the Court concluded:

All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.[13]

The Fifth Circuit has followed *Liteky* in affirming rulings of district judges who denied motions to disqualify: *United States v. Mizell*[14] (trial judge refused to recuse himself in retrial of defendant and rejected defendant's plea agreement prior to the first trial); *United States v. Landerman*[15] (defendant claimed judge's remarks and rulings favored the United States; the Fifth Circuit emphasized the *Liteky* Court's holding that the judge's rulings constitute grounds for appeal, not recusal); *United States v. Gray*[16] (defendants argued that the judge made improper remarks during voir dire, unfairly limited opening and closing arguments, arbitrarily limited the number of character witnesses and abandoned the neutral role); *In re Corrugated Container Antitrust Litigation*[17] (defendants sought recusal in the civil case because of evidentiary rulings and remarks made during a criminal case in which the defendant was involved).[18]

In *Conkling v. Turner*[19], the Fifth Circuit affirmed this judge's denial of a motion to recuse where the plaintiff sought to call this judge as a witness. Plaintiff alleged that the judge was relying on his own resolution of events which occurred during the trial. The plaintiff also requested that the Fifth Circuit order that the case be assigned to another district

---

12. *Liteky,* 510 U.S. at 555–56, 114 S.Ct. at 1157 (citations omitted).

13. *Liteky,* 510 U.S. at 556, 114 S.Ct. at 1158.

14. 88 F.3d 288 (5th Cir.1996).

15. 109 F.3d 1053 (5th Cir.1997).

16. 105 F.3d 956 (5th Cir.1997).

17. 614 F.2d 958 (5th Cir.1980).

18. Numerous other courts have held that familiarity with defendants and/or the facts of the case that arise from earlier participation in judicial proceedings is not sufficient to disqualify a judge from presiding in a case. See, e.g., *United States v. Clark,* 605 F.2d 939, 941–42 (5th Cir.1979); *Rice v. McKenzie,* 581 F.2d 1114, 1118 (4th Cir.1978); *Weber v. Garza,* 570 F.2d 511, 512 n. 1 (5th Cir.1978); *United States v. Wolfson,* 558 F.2d 59, 62–64 (2d Cir.1977); *United States v. Archbold–Newball,* 554 F.2d 665, 681–82 (5th Cir.1977); *United States v. Partin,* 552 F.2d 621, 637–39 (5th Cir.1977); *United States v. Cowden,* 545 F.2d 257, 265–66 (1st Cir.1976); *United States v. Harris,* 542 F.2d 1283, 1303–04 (7th Cir.1976); *United States v. Jeffers,* 532 F.2d 1101, 1111–12 (7th Cir.1976), *aff'd in part, vacated in part,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Meeropol v. Nizer,* 429 U.S. 1337, 1338 n. 2, 97 S.Ct. 687, 689 n. 2, 50 L.Ed.2d 729 (1977); *United States v. Montecalvo,* 545 F.2d 684, 685 (9th Cir.1976); *United States v. Dodge,* 538 F.2d 770, 782 (8th Cir.1976); *United States v. Bernstein,* 533 F.2d 775, 784–85 (2d Cir.1976).

19. 138 F.3d 577 (5th Cir.1998).

judge. When rejecting the plaintiff's contentions, the Fifth Circuit held:

> However, Conkling also requests that we direct that on remand the case be assigned to another district judge. We decline to do so. To begin with, we do not conclude that the district court erred in denying the motion to recuse. As a general rule, for purposes of recusal, a judge's " '[p]ersonal' knowledge of evidentiary facts means 'extrajudicial,' " so "[f]acts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification."

> "Opinions formed by the judge that are based on ... events occurring during the proceedings do not constitute a basis for recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' "

There is here no reflection of any such "deep-seated favoritism or antagonism" as would "make fair judgment impossible." Conkling relies on *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), but we see here no invasion of the principle there relied on, namely that "no man is permitted to try cases where he has an interest in the outcome." Nor is *Tyler v. Swenson*, 427 F.2d 412 (8th Cir.1970), also relied on by Conkling, on point, for there it was charged that the judge, in the unrecorded chambers conference, engaged in improper threats to cause the defendant to plead guilty. Here, there has never been any assertion that the district judge did or said anything improper at the mentioned chambers conference.[20]

It is also clear that it "is a judge's duty to refuse to sit when he is disqualified but it is equally his duty to sit when there is no valid reason for recusation." [21] Furthermore, a "judge should not recuse himself on unsupported, irrational or highly tenuous speculation." [22]

The court now turns to a discussion of the specific allegations raised by the defendants in their two motions.

## III. RECUSAL MOTION I

### A. Forum Shopping by the United States

A simple reading of these allegations reveals that many of the complaints are related to rulings made or orders signed by Judge John V. Parker or are related to actions taken by the United States Attorney's office which cannot be the basis of a motion to recuse this judge.[23]

To support their claim that the United States has been engaged in forum shopping, the defendants contend that the United States chose the Middle District of Louisiana over the Eastern District; the government went to New York to have Judge Parker sign a search warrant; Judge Parker granted the government's request to hold a hearing on the seized funds in the Middle District; and Judge Parker impaneled a grand jury in the Mid-

---

**20.** *Conkling*, 138 F.3d at 592–93 (citations omitted).

**21.** *Edwards v. United States*, 334 F.2d 360, 362 (5th Cir.1964) (en banc), *cert. denied*, 379 U.S. 1000, 85 S.Ct. 721, 13 L.Ed.2d 702 (1965); *Hodgson v. Liquor Salesmen's Union Local No. 2 of the State of New York, et al.*, 444 F.2d 1344, 1347 (2nd Cir.1971); *Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1508 (10th Cir.1995).

**22.** *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir.1987); *In Re American Ready Mix, Inc.* 14 F.3d 1497, 1501 (10th Cir.), *cert. denied*, 513 U.S. 818, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994).

**23.** If the defendants believe the government has been guilty of prosecutorial misconduct, the defendants may file such a motion with the court.

dle District to investigate the *Edwards* matter after the United States dismissed a grand jury in the Eastern District of Louisiana. None of these allegations pertain to this judge. As noted earlier in Part II of this opinion, rulings made by a judge do not usually form the basis for disqualification. Thus said, it should follow that rulings made by one judge which cannot form the basis for disqualification for the ruling judge should not and cannot form the basis for the disqualification of another judge who did not participate in those rulings. The defendants fail to specify how any of the actions of Judge Parker and the United States Attorney's office which may constitute forum shopping by the United States can cause this judge to be disqualified under the facts of the case. A close examination of the record reveals none.

### B. Rulings and Comments Made in Pre–Indictment Grand Jury Challenges and Petit Jury Challenges and Rule 11 Sanctions

The defendants state that Edwin and Stephen Edwards filed a pre-indictment motion to dissolve the grand jury investigating them on the grounds that blacks were excluded from grand jury service.[24] The defendants further contend that during the hearing held on this motion and on a motion filed in a companion suit challenging the petit jury selection procedures in the Middle District,[25] Judge Parker and this judge threatened the attorneys with sanctions under Rule 11 of the Federal

Rules of Civil Procedure.[26] Counsel for the defendants further state that their efforts were vindicated despite the comments made by Judge Parker at the December 4, 1997 hearing and in the Rule 11 sanctions hearings, because the court subsequently ordered changes made to the petit jury selection system in the *Phillips* case.[27] Finally, the defendants contend that they will file a motion challenging the manner in which the grand jury was selected in this case and Judges Parker and Polozola must be recused because the defendants will call them as witnesses during a hearing on this motion.[28]

■ To the extent that the allegations above are based on rulings made by a court, they cannot form the basis for the disqualification of this judge. The ruling made by this court in the pre-indictment motion filed by Edwin and Stephen Edwards could have been, but was not appealed. There is no legal or factual basis to cause this judge to disqualify himself in this case because of this ruling. As noted in footnote 27, this judge did take corrective action regarding the petit jury selection procedures in the Middle District in the *Phillips* case. Irrespective of the prior ruling made by the court, which in the *Phillips* case was favorable to those defendants, the court's ruling does not disqualify this judge from presiding in this case.

■ The defendants also claim that some of their attorneys were threatened with Rule 11 sanctions for filing motions

24. *In Re: Grand Jury,* Miscellaneous Case No. 97–39 (M.D.La.); *In Re: Grand Jury,* Civil Action No. 97–1115 (M.D.La.).

25. *United States v. $383,500 U.S. Currency, et al.,* Civil Action No. 97–678 (M.D.La.).

26. As will be shown hereinafter in this opinion, the transcripts of conferences and hearings held before this judge in the pre-indictment motion filed by the Edwardses and in the *Phillips* case clearly show that this judge did not threaten any party with Rule 11 sanctions nor did this judge order any attorney or party to show cause why Rule 11 sanctions should not be imposed.

27. The defendants fail to state in their motion or memorandum that this judge stayed the *Phillips* trial, struck the initial jury panel summoned for the *Phillips* trial, and ordered changes made to the petit jury selection procedures in the Middle District. Defendants further fail to state that the defendants in the *Phillips* trial did not challenge the selection of the jury that actually tried the defendants in that case.

28. After the motion to recuse was filed, the defendants filed a motion to dismiss the indictment on the ground that the grand jury was not properly selected.

challenging the grand jury and petit jury selection procedures in the Middle District of Louisiana. While Judge Parker may have threatened to impose Rule 11 sanctions on the attorneys and while Judge Parker did order the attorneys for the *Edwards* defendants to show cause why Rule 11 sanctions should not be imposed on them, it is clear that this judge did not threaten to impose sanctions, issue a show cause order or otherwise impose Rule 11 sanctions on any defendant or party in this case or in the *Phillips* case. The transcripts of conferences and hearings held in the *Phillips* case clearly establish these facts. Furthermore, Michael Fawer, Edwin Edwards' attorney in this case, who also represented the defendant Phillips, admits on the record that this judge was in no way involved in any Rule 11 sanction proceeding. Thus, in the January 14, 1998 status conference held in the *Phillips* case, the following exchange occurred between this judge and Mr. Fawer:

> Mr. Fawer: Going back, your honor, very briefly. What happened is that the first day of December of '97, the motion—there was this initial motion that was filed in the companion Edwards' cases. There was a hearing that your honor was at—I was not because I was in another proceeding.
>
> The Court: Your appearance was waived and you were represented by Mr. Koch and Mr. Unglesby.
>
> Mr. Fawer: And not only was my appearance waived, I made it very clear to Judge Parker thereafter that had I been there, I would have signed the papers and taken the same position. Be that as it may—
>
> The Court: I am not worried about all the stuff that Judge Parker dealt with—
>
> Mr. Fawer: But it has a bearing in this sense, your honor—
>
> The Court: I am just more concerned about whether or not you were supposed to be there, and they properly, I think, stated your position, that you could not be there and they were representing whatever arguments they made—
>
> Mr. Fawer: They not only accurately stated my position procedurally, they've stated my position substantively, which was precisely the position that Carl [sic] Koch had taken at the time.
>
> In any event, what came out of that was something of a brouhaha which ended in there being a denial of certain motions, and granting of it in one case and a denial in another, and the suggestion that there may have been even a Rule 11 problem because of the audacity of even having thought that there could have been a problem with this issue.
>
> I did appear in court before Judge Parker—
>
> **The Court: I was not part of that.**
>
> **Mr. Fawer: I understand.** But it has a bearing. I mean people were standing in line waiting to see who was going to get a Rule 11 sanction put on them for even having the audacity to make such a motion. And I say that somewhat outraged, your honor, because—
>
> The Court: Well, go tell that to Judge Parker.
>
> Mr. Fawer: Well, I understand that.
>
> The Court: I said—
>
> Mr. Fawer: We were not about to go making that same motion and exposing ourself in another case until someone said Rule 11 sanctions are not appropriate.
>
> The Court: What everybody needs to understand is there was a joint hearing. We sat en banc. I had the grand jury motion. Judge Parker had another motion. I made my ruling. He made his ruling. One ruling was sort of a joint ruling to put the '89 materials out.
>
> Mr. Fawer: Correct.

The Court: Once I made my ruling, I did not participate nor make any allegations to anybody regarding—

Mr. Fawer: You are absolutely right.

The Court:—any type of violation of any kind, nor did I participate in the Rule 11 hearing.

Mr. Fawer: Correct.

The Court: Nor did I order it, nor was it even related to the case that I had. Well, I just want to make that clear for the record .

Mr. Fawer: It is absolutely clear. What you say is corroborated by the record itself—

The Court: Well, we don't have that other record in this one—

Mr. Fawer: I do. I have it right here.[29]

On January 30, 1998, a hearing was held in the *Phillips* case during which the following colloquy occurred between Mr. Fawer and this judge:

The Court: The question is why didn't I tell you that the clerk's office was starting to do things for future cases four months from now that is not even within the time period that this case has been set for trial.

Mr. Fawer: with all due respect, your honor—

The Court: I can't—

Mr. Fawer:—it is being corrected because we brought—

The Court: Okay. So do you want me to pin a badge on you? Obviously—

Mr. Fawer: Of course, I do. We almost got—

The Court:—obviously—

Mr. Fawer:—pegged with something other than a badge for making this.

The Court: Well, go—

Mr. Fawer: We—

The Court:—Excuse me a second. We went through this at our meeting. I

did not file a Rule 11 sanction against you or any other lawyer. I am tired of it and this will cause me to do something.

I told you in a very, very nice way at our meeting I am the judge of this court, in this section, in this case, and Judge Parker had a court across the hall. He is the chief judge. He can do what he wants, and I can do what I want.

Now, he chose to do a Rule 11 sanction. He withdrew the Rule 11 sanction. That case is over insofar as that is concerned.

I don't know what his comments were. I only read them in the paper. I wasn't at the hearing.

I sat in the same hearing with Judge Parker. I made my ruling. I walked out of the court. You never heard me one time in that hearing, not a single time, question you—you were not there—but question any of your colleagues or anybody else about Rule 11 or anything else. Never did.

When we went to our meeting, the Rule 11 issue came up over here in relation to whether or not the government's argument that this motion was timely or not timely, should be granted or denied.

Then in your brief that you just filed, the supplemental brief which I have read very carefully, you make an argument that because Judge Parker filed a motion or show cause about Rule 11 that motion prevented you and your colleagues in this case from filing a motion. That is something that is going to be argued later.

The point is, I made several comments during our conference. **Number one, I said, when I sat in the Edwards' case on the grand jury matter, I said nothing about Rule 11.**

When I came over here in the Phillips case, I told you that this was a criminal

---

29. *U.S. v. Phillips, et al.,* Criminal Action No. 97–68, Rec.Doc. No. 258 (Transcript of status conference held January 14, 1998, pp. 15–17) (emphasis supplied by the Court).

case and Rule 11 of the Federal Rules of Civil Procedure did not apply in this case.

I have granted every motion you have filed in this case. You asked for a stay. You got a stay. You asked for the first batch of information. You got a batch of information.

I wasn't sure about what all other things were needed. We had a conference call—what? Two days before Christmas, at my initiation, okay, to make sure things were going okay.

You filed another motion. I granted the motion and gave you more information.

Mr. Fawer: No, that was the stay, judge.

The Court: Okay. A stay, but I gave you more information.

Mr. Fawer: Certainly did.

The Court: Each time you asked for information, I gave it to you. And at the last conference which might explain why some things are getting done or not getting done, I told you that I was going to stay at this courthouse and I was going to insist that they go through those records and give you what you wanted and it was going to get done.

The first night everybody stayed until 10:30, including myself. Then I thought it was just a hardship to make everybody work all night. But I was prepared to do that, but I didn't do it. And then the information came and this is what you got.

We had a conference. I know you have a very big trial next week. At least I think from the morning paper you do or week after, whenever.

Mr. Fawer: Next week—Monday.

The Court: Okay. We sat down. We said okay. Let's pick a hearing date so that you could concentrate on the other case because it is a very serious case. That is why the hearing is to-day.

\* \* \* \* \* \*

The Court: And if the truth means that maybe the court doesn't look very good, so be it. **If the truth also means we acknowledge that a mistake was made and we are now correcting it, I am not going to penalize anybody because actually that's the relief you are seeking.**

**Mr. Fawer: Perfectly accurate. That's exactly right.**

The Court: Now, getting back to what all started this, you have to go to Judge Parker and take this record to him and say, judge, you know, you hit us with Rule 11, although he didn't cite you. You hit us with Rule 11 or you hit my colleagues with Rule 11 sanctions, and look at all this information we found out. That's a separate and distinct issue—

Mr. Fawer: We have no interest in do-ing that.

The Court: Well, but you are bringing it up. And what I am saying to you is, I can only do what I can do in a case.

It would have been very easy to deny your stay. It would have been very easy to wash this off, and hope that the Fifth Circuit affirmed me or maybe your client would have been acquitted and we didn't have to do all this. That isn't what happened.

Every request for information that you have had, that you have requested to the extent that it exists, has been obtained.

Now, if that vindicates you and Mr. Koch and Mr. Unglesby and the Unglesby–Koch law firm in the Edwards matter—which I am not truly concerned about—then everybody who reads anything about this is going to say, look, they got—the motion shouldn't have been filed because look at it. But I am not responsible for any of that and I am not saying Judge Parker—you know,

that was his motion. He stated certain things on the record. He withdrew the motion. So there is nothing else to do about that. I don't know why we are spending so much time on it.[30]

■ The defendants seek disqualification of this judge because of prior rulings made by the court on grand and petit jury selection procedures. Defendants contend that they cannot get a fair hearing on their pending motion to challenge the method in which the grand jury which returned the indictment was selected. However, the quoted statements of the court set forth above and of Mr. Fawer during the *Phillips* case clearly refute this allegation. In addition, during the January 30, 1998 hearing in the *Phillips* case, the following additional statements were made:

> The Court: ... Whatever it takes, the Middle District of Louisiana is going to have the right kind of jury panel to pick the type of juries without discriminating against anybody, white or black, man or woman or any other reason as long as I am sitting in this chair.
>
> I know I speak for Judge Parker.
>
> Mr. Fawer: And I know you are saying that sincerely. I have no doubt about it.[31]

■ Finally, the defendants contend that this judge should be disqualified because they intend to call me as a witness at a hearing to challenge the grand jury selection procedure. Neither counsel nor a party may seek recusal of a judge by announcing that they intend to call the judge as a witness.[32] In *United States v. Cross,*[33] the defendant moved to dismiss the indictment on the ground that black citizens had been discriminated against in selection of the grand jury foreman in violation of the Sixth Amendment. Defendant also sought recusal of the district judges on the ground that the judges were necessary witnesses. The court held: "Even assuming judges are not immune from service of process, the cases seem to be in agreement that judges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed."[34] Similarly, in *United States v. Morgan,*[35] the Supreme Court compared a proceeding before the Secretary of Agriculture to one before a judge and stated that an examination of the mental processes of a judge would be destructive of judicial responsibility and, thus, should not be permitted. The Supreme Court noted:

> Just as a judge cannot be subjected to such a scrutiny, ... so the integrity of the administrative process must be equally respected.[36]

"Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to 'frivolous attacks upon its dignity and integrity, and ... interruption of its ordinary and proper functioning.' "[37] The test which should be applied in deciding whether a judge may be compelled to testify was set forth in *Standard Packaging Corporation v. Curwood, Inc.*[38]

---

**30.** *U.S. v. Phillips, et al.,* Rec.Doc. No. 158 (Transcript of hearing, January 30, 1998, pp. 134–137, 139–140).

**31.** *U.S. v. Phillips, et al.,* Rec.Doc. No. 158 (Transcript of hearing, January 30, 1998, p. 138).

**32.** *United States v. Diana,* 605 F.2d 1307 (4th Cir.1979); *United States v. Cross,* 516 F.Supp. 700 (M.D.Ga.1981).

**33.** 516 F.Supp. 700 (M.D.Ga.1981).

**34.** *Cross,* 516 F.Supp. at 707.

**35.** 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

**36.** 313 U.S. at 422, 61 S.Ct. at 1004–05.

**37.** *United States v. Dowdy,* 440 F.Supp. 894, 896 (W.D.Va.1977), *citing United States v. Valenti,* 120 F.Supp. 80 (D.N.J.1954).

**38.** 365 F.Supp. 134 (N.D.Ill.1973).

The essential line of demarcation appearing from the cases is that judicial and quasi-judicial officers may be compelled to testify only as to relevant matters of fact that do not probe into or compromise the mental processes employed in formulating the judgment in question. . . . Thus, even though a particular inquiry may be factually directed, it may still be objectionable if it invades upon an official's good-faith decision-making prerogative. It is apparent, however, that this doctrine does not exempt compulsory testimony as to all factual matters related to those prerogatives.[39]

Even if the defendants actually subpoenaed this judge, it is doubtful that I would be required to testify.[40] As noted earlier, a judge is not required to explain any of his decisions nor to divulge reasons which may have motivated his actions or opinion. The defendants' factual basis for calling this judge as a witness is totally insufficient. Furthermore, there is every indication that the facts and evidence required for the defendants to support their arguments on their motion to dismiss the indictment are available from sources other than this judge. Attempts to disqualify judges by indicating that the judge will be called as a witness are not favored and are rarely granted. Such an easy method of disqualifying a judge should not be encouraged or allowed.

### C. The Manner in Which Cases Involving Defendants Who Plead Guilty Were Assigned

 The defendants complain that all but one defendant who entered guilty pleas to related charges in the *Edwards* investigation did so before Judge Parker.

The defendants basically complain that the court's random selection allotment procedures were not followed.[41] Defendants also allege that Judge Parker participated in plea negotiations in the cases in which he accepted guilty pleas. The defendants also object to the statements made by Judge Parker at the time he accepted the guilty pleas. The court will discuss the court's allotment procedures in Part III(D) of this opinion. However, the only allegation about this judge regarding defendants who have entered guilty pleas involves *United States v. Derouen.*[42] Insofar as the *Derouen* case is concerned, the defendants claim that the case was initially improperly allotted and that this judge improperly engaged in plea discussions with Derouen and the United States. The record in the *Dereoun* case clearly shows that this court did not engage in any plea negotiations with the defendant, his attorney or attorneys for the United States before or during his arraignment. Thus, at the arraignment held on August 25, 1998, the following occurred:

The Court: Okay. There have been no discussions between you and me personally, have there, regarding what your sentence will be in this case?

Mr. Derouen: No, sir.

The Court: And, Mr. Ortego, [attorney for Derouen] you and I have not discussed nor have I promised you any specific sentence?

Mr. Ortego: That's correct, your honor.

The Court: And even from the government, I have not discussed with you any specific sentence?

Mr. Irwin: That's correct, your honor.[43]

---

**39.** *Standard Packaging*, 365 F.Supp. at 135.

**40.** If this judge is subpoenaed, a hearing can be held at that time to determine whether it is necessary for the judge to testify.

**41.** A decision to allot cases on a docket is a particular ruling of the court and cannot be used as a basis to recuse a judge.

**42.** *United States v. Derouen*, Criminal Case No. 97–66 (M.D.La.).

**43.** *United States v. Derouen*, Rec.Doc. No. 25 (Transcript of arraignment, August 25, 1998, p. 30).

Whatever Judge Parker may or may not have said, and whatever rulings he made or other actions he took cannot be attributed to this judge even if his rulings could be considered in deciding the disqualification of a judge. Furthermore, the fact that this case was allotted to this judge in accordance with the court's regular allotment procedures should not be a ground to cause the disqualification of this judge.

### D. This Indictment Was Not Randomly Assigned and the Defendants Have Been Precluded From Having An African–American Judge Preside in Their Case

 The defendants object to the manner in which this case was assigned to this judge.[44] As the record reflects, all three United States District Judges in this district signed an en banc order which assigned this case to Chief Judge Polozola. Defendants complain that this order is contrary to General Order 98–1 and, therefore, this judge should now be disqualified from presiding in this case. It is clear that the en banc order signed by all of the judges of this court did not remove this case from any other judge.[45] An order signed by a judge is not a proper basis for having a judge recused. The defendants can obviously appeal the en banc order signed by all of the judges of this court.

However, this en banc order cannot be used as a basis for disqualifying this judge from hearing this case.

 The Fifth Circuit and other courts have affirmed the principle that district judges may by rule, order or consent assign the cases between themselves.[46] It is also well-settled that a defendant does not have the right to have his case heard by a particular judge .[47] Nor does a defendant have the right to have his judge selected by a random draw.[48] These principles have been clearly spelled out by the Fifth Circuit in a series of cases. Thus, in *United States v. Stone*, the Fifth Circuit stated:

> Stone's contention that a district judge cannot transfer his arraignment calendar to another district judge without the consent of the accused and his lawyer is patently frivolous. District judges may by rule, order or consent transfer cases between themselves. Title 28, U.S.C.A. § 137; Rule 57(b), F.R.Crim.P. Each judge of a multi-district court has the same power and authority as each other judge. Moreover, district judges have the inherent power to transfer cases from one to another for the expeditious administration of justice.[49]

---

44. The defendants' claim that this case is being treated differently from other cases on the court's docket is without merit. The Court, in the interest of justice, judicial economy and to regulate the docket, has on occasion transferred cases from one judge to another, assigned cases to visiting judges and tried cases on another judge's docket to assist the judge who may have been sick or otherwise needed help. The fact that the judges of this court wish to help each other with the court's docket should be praised, not condemned.

45. This is also not a case where the chief judge or other judges are removing a case from a judge because they may disagree with another judge's ruling. See *In Re McBryde*, 117 F.3d 208 (5th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998).

46. *United States v. Stone*, 411 F.2d 597, 598 (5th Cir.1969); *United States v. Martinez*, 686

F.2d 334, 338 (5th Cir.1982); *United States v. Keane*, 375 F.Supp. 1201, 1204 (N.D.Ill.1974), *aff'd in pertinent part*, 522 F.2d 534 (7th Cir. 1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976); *Board of Sch. Dir. of the City of Milwaukee v. State of Wisconsin*, 102 F.R.D. 596 (E.D.Wis.1984); *Foster v. Gloucester County Bd. of Chosen Freeholders*, 465 F.Supp. 293, 296 (D.N.J.1978). *See also* 28 U.S.C. § 137; F.R.Crim.P. 57(b).

47. *United States v. Braasch*, 505 F.2d 139, 147 (7th Cir.1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975); *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984).

48. *Sinito*, 750 F.2d at 515; *Keane*, 375 F.Supp. at 1205.

49. *Stone*, 411 F.2d at 599 (citations omitted).

In *United States v. Martinez*, the Fifth Circuit reaffirmed the court's decision in *Stone* in concluding the "transfer and consolidation of these actions were proper."[50] In *United States v. Keane*, the defendant argued that assignment of the case violated his due process rights, Rules 45(d), 47, 49 and 57 of the Federal Rules of Criminal Procedure and permitted the U.S. Attorney to "forum shop."[51] The court rejected these contentions stating:

It is well settled that district courts retain the inherent power to control the assignment and transfer of cases so as to facilitate the business of the court and to promote the expeditious administration of justice, Rule 50 of the Federal Rules of Criminal Procedure codifies this general principle. Rule 57 . . . delegates to individual courts the authority to regulate the details of assignment procedure in a manner best suited to the individual needs of each district.

As the defendant concedes, due process does not accord him a right to have a judge assigned to his case on a random basis. Nor does it require a hearing on the issue of whether defendant's case will be protracted, difficult or widely publicized.

Due process does require that criminal defendants be accorded a fair trial before an impartial judge. But a defendant has no vested right to have his case tried before any particular judge, nor does he have the right to determine the manner in which his case is assigned to a judge. Local regulations are promulgated by district courts primarily to promote efficiency of the court and the court has a large measure of discretion in applying them.[52]

"Local rules governing the assignment of cases are designed as internal housekeeping rules to promote the efficient operation of the district courts; they are not designed to confer rights on litigants."[53] As the Eighth Circuit stated in *Levine v. United States*:[54]

Even if control over the assignment of cases were not observed by the court under the rule, the judges have inherent power to administer the business of the courts in an orderly way. Litigants have no vested right in the order in which cases are assigned for trial; and it is not contended that the judge to whom the case was assigned was in any way disqualified.[55]

Furthermore, 28 U.S.C. § 137 provides that the "business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the Court." Federal Rule of Criminal Procedure 57(b) provides that if "no procedure is specifically prescribed by Rule, the Court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

▆▆▆▆ A review of the facts of this case reveals that the judges of this court did in fact follow General Order 98–1 and the rules of this court in assigning this case to Chief Judge Polozola. But even if General Order 98–1 was violated, the defendants have no right to recuse this judge from presiding in this case for that reason. Finally, defendants' claim that they are entitled to have an African–American judge assigned to their case is frivolous. In fact, the court could not grant the motion even if it wanted to since the record reflects that these defendants have also filed a motion to recuse Judge Ralph Ty-

**50.** *Martinez,* 686 F.2d at 339.

**51.** *Keane,* 375 F.Supp. 1201 at 1204.

**52.** *Keane,* 375 F.Supp. 1201 at 1204–05 (citations omitted).

**53.** *Sinito,* 750 F.2d at 515; *See also United States v. Torbert,* 496 F.2d 154, 157 (9th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974).

**54.** *Levine v. United States,* 182 F.2d 556 (8th Cir.1950), *cert. denied,* 340 U.S. 921, 71 S.Ct. 352, 95 L.Ed. 665 (1951).

**55.** *Levine,* 182 F.2d at 559.

son, the only African–American judge in this district.

 The defendants are entitled to have their case tried by a fair and impartial judge. No relevant evidence has been presented that these defendants cannot be tried by this judge in such a manner. The fact that the defendants would prefer to have a judge other than me try their case is immaterial. Finally, the court must note that the defendant Edwin Edwards was a named defendant in a civil suit which was pending before this court during each of his four terms as Governor of the State of Louisiana. A review of the entire record in *Williams v. Foster*[56] during the time that Edwin Edwards was a defendant in the *Williams* case[57] reveals that the only appeals taken in his name from the numerous orders and judgments rendered by this judge were on August 18, 1995[58] and November 22, 1995.[59] Furthermore, there is not a single occasion in the *Williams* record when then-Governor Edwards complained that he was not being treated in a fair and impartial manner by this judge. It would appear that this sixteen-year history of fair and impartial treatment to Edwin Edwards is strong evidence that Edwin Edwards and the other defendants in this case can and will receive a fair and impartial trial before this judge. The general rule is that "bias sufficient to disqualify a judge must stem from personal, extrajudicial sources, although there is an exception where pervasive bias and prejudice is shown by otherwise judicial conduct."[60] A review of the record reveals neither personal bias

against the defendants nor pervasive bias or prejudice by otherwise judicial conduct. My impartiality cannot reasonably be questioned by the defendants or any other reasonable person.

### E. This Judge Issued a "Gag" Order After the Indictment Was Returned

 The defendants also seek my recusal because I issued a "gag" order on my own motion after the indictment was returned. The court's "gag" order not only applies to the defendants, but also to the government, to witnesses, and court employees. While the defendants seek my recusal because of this order, no defendant has moved to vacate or modify the "gag" order, nor has any defendant appealed the order to the Fifth Circuit Court of Appeals. It is obvious that a "gag" order is a ruling of the court. The fact that a judge has issued a "gag order" is an appealable decision, but not a ground for recusal. Thus, in *United States v. E.A. Gregory, et al.*,[61] the defendants claimed that the judge should be recused because he issued two " 'gag orders' which restricted defendants' access to the media and to discovery materials" which were a " 'blatant disregard' of statutory and constitutional law."[62] After reviewing the record, the Fifth Circuit found the judge's comment about his financial disclosure statement was not a basis for disqualification. The Fifth Circuit also noted that the "remaining conduct complained of took place in a judicial context and, in the absence of a showing of perva-

**56.** Civil Action No. 71–98 (M.D.La.). The name of this case changes with the election of a new governor.

**57.** An appeal was taken of a decision rendered by U.S. District Judge E. Gordon West which was based on a Special Master's Report rendered by this judge when I was a U.S. Magistrate Judge.

**58.** Rec.Doc. No. 7743, Civil Action No. 71–98 (M.D.La.).

**59.** Rec.Doc. No. 8149, Civil Action No. 71–98 (M.D.La.).

**60.** *United States v. E.A. Gregory, et al.*, 656 F.2d 1132, 1137 (5th Cir.1981).

**61.** 656 F.2d 1132 (5th Cir.1981).

**62.** *Gregory*, 656 F.2d at 1137. The defendants also contended the judge had made statements in six earlier civil lawsuits and had commented negatively on the defendants' request for his financial disclosure statement.

sive bias, cannot serve as the basis for disqualification.[63] I also refuse to disqualify myself because I issued a "gag" order applicable to all parties, attorneys, witnesses and court personnel.

## F. The Court has Denied the Defendants Access to Information in the Clerk's Office

 The defendants continue their quest to disqualify this judge based on other rulings issued by the court. The court has authorized the clerk's office to provide some information sought by the defendants and denied the defendants' request for some information.[64] Some information sought by the defendants is privileged material and information not relevant to issues pending before the court. For example, the defendants seek drafts of court orders, communications between judges on court orders, and communications between the court and the Clerk regarding court orders. The final order issued by the court on the revised Jury Selection Plan affirmed by the court and the Judicial Council of the Fifth Circuit is the only relevant document. To require judges to disclose drafts of opinions or orders or to require judges to disclose communications between judges and their staff is not only a dangerous precedent, but strikes at the very core of judicial independence federal judges have under Article III of the United States Constitution. When necessary and proper, the court will issue appropriate orders for information requested by the defendants or the United States. However, these orders of the court do not form a legal or factual basis for the judge to recuse himself.[65]

---

63. *Gregory,* 656 F.2d at 1137.

64. See the Court's Orders of November 13, 1998 and December 16, 1998, Rec.Doc. Nos. 14 and 51, respectively. Defendants also have a motion for reconsideration pending before the Court.

## G. This Judge Previously Held Michael Fawer in Contempt of Court

Defendants argue that because this court held Mr. Fawer in contempt during the trial in the *Phillips* case, I should be recused in the *Edwards* case. They further contend that my action against Mr. Fawer will be transformed into bias against them. Their contentions are without merit. To prevent the contempt citation against Mr. Fawer from interfering with the defendants on trial in the *Phillips* case, the court deferred until the end of that case any sanctions or motions for reconsideration. On June 22, 1998, Mr. Fawer filed a letter seeking reconsideration of the court's contempt order. At the time Phillips and his co-defendant appeared before the court for sentencing on July 31, 1998, the court stated the following:

> The Court: The court will allow Mr. Phillips to enter his appeal on all issues properly reserved during the course of the trial.
>
> Neither of you are eligible for self-surrender, so each of you will be remanded back to the custody of the marshal pending any appeals taken in this case.
>
> There is one final thing that the court will state that, as the record will reflect, and I wanted to intentionally leave this totally out of the proceedings today but that is the only thing left. The court did find Mr. Fawer in contempt of court. The court has not yet imposed any sanctions, and I know Mr. Fawer [is] involved in a very lengthy trial.
>
> No other sanctions will be imposed against any other lawyer in the case, but the court will maintain the contempt citation against Mr. Fawer and will con-

---

65. Despite defendants' contentions, the same information released to the United States was also released to the defendants. Simply put, defendants can appeal the court's orders but not use the orders in question as the basis for disqualifying the judge.

duct an appropriate hearing wherein the court will set forth the various concerns that the court has had regarding his conduct during the course of the trial, and give him an opportunity to respond, and then impose what I believe to be an appropriate sanction. **But we will do that separate and apart from what is going on today because I think these gentlemen have a right to have their case considered separately.**[66]

 When the indictment in the *Edwards* case was returned, I announced to the parties that to avoid any sense of impropriety and to avoid having the contempt issue interfere with a fair and impartial trial for these defendants, I would request then-Chief Judge Henry Politz of the Fifth Circuit Court of Appeals to appoint another judge to handle the contempt matter, Mr. Fawer's letter of reconsideration, and the government's opposition. Chief Judge Politz appointed Senior United States District Judge Barefoot Sanders of the Northern District of Texas to preside in the contempt matter. After reviewing the partial record he had, Judge Sanders set aside the contempt sanction. The contempt matter in *Phillips* is now resolved. The fact that this judge held Mr. Fawer in contempt or that Judge Sanders found some of Mr. Fawer's remarks to the court inappropriate is not sufficient reason to disqualify this judge. The record in the *Phillips* case and in this case reflects that I have taken appropriate actions to prevent the contempt sanction from interfering with a fair trial for the defendants in the *Phillips* case and in this case. The court's decision to separate the contempt sanction from the *Phillips*

trial and to remove himself from the contempt matter by requesting the matter be referred to another judge is strong evidence of the court's intent to preside in a fair and impartial manner and to avoid any appearance of personal bias against the defendants and Mr. Fawer.

 It is clear that the judge's personal bias or prejudice must be directed against a party.[67] Thus, "[b]ias for or against an attorney, who is not a party, is not enough to require disqualification unless it can also be shown that such a controversy would demonstrate a bias for or against the party itself."[68] "In order for bias against an attorney to require disqualification of the trial judge, it must be of a continuing and personal nature and not simply bias against the attorney or in favor of another attorney because of his conduct."[69] The rationale for the court's rejection of the imputation theory was explained by the court in *Davis v. Board of Sch. Comm'rs of Mobile County*[70] as follows:

> No bias or prejudice personal to Foster and Buskey is set out. They seek disqualification on an imputation theory the bias against their lawyer is imputed to them. Read broadly, this peremptory challenge type approach would bid fair to decimate the bench. Lawyers, once in controversy with a judge, would have a license under which the judge would serve at their will.[71]

 Furthermore, a "party cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased

---

**66.** *United States v. Phillips, et al.,* Criminal Action No. 97–68, Rec.Doc. No. 249 (Transcript of sentencing, pp. 98–99) (emphasis supplied by the Court).

**67.** *Davis v. Board of Sch. Comm'rs of Mobile County,* 517 F.2d 1044 (5th Cir.1975); *In re Corrugated Container Antitrust Litig.,* 614 F.2d 958 (5th Cir.1980).

**68.** *Henderson v. Dept. of Pub. Safety and Corrections,* 901 F.2d 1288, 1296 (5th Cir.1990), relying on *Davis,* 517 F.2d at 1050–51.

**69.** *Henderson,* 901 F.2d at 1296.

**70.** 517 F.2d 1044 (5th Cir.1975).

**71.** *Davis,* 517 F.2d at 1050.

against them." [72] In other words, a judge is not required to recuse himself simply because a party, or an attorney for a party, has personally attacked the judge in other proceedings. [73] In fact, "courts have typically rejected recusal motions based on, and effectively created by, a litigant's deliberate act of criticizing the judge or judicial system." [74] Simply put, parties "cannot be allowed to create the basis for recusal by their own deliberate actions. To hold otherwise would encourage inappropriate 'judge shopping'" [75] It is also important to note the caution expressed by now-Justice Stephen Breyer, who, while sitting on the Second Circuit, noted that "the disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." [76] It is for this reason that "the judge must still tread cautiously, recognizing, on the one hand, the great importance to the judicial institution of avoiding any appearance of partiality, while simultaneously remaining aware of the potential injustices that may arise out of unwarranted disqualification." [77]

■■■■ The fact that the court has held an attorney in contempt in a former proceeding does not require the judge to recuse himself in another case involving the same attorney. Further, it is proper for a judge who has cited an attorney for contempt to transfer the case to another judge for a final hearing, particularly when the contemptuous conduct may have involved a personal attack on the judge. [78] This court's decision to ask the Chief Judge of the Fifth Circuit to assign another judge to preside over the contempt citation filed against Michael Fawer in *United States v. Phillips* is not only within the court's discretion, but the appropriate procedure to follow. Thus, in *Toledo Newspaper Co. v. United States* [79], the court stated: .

> At the trial the court was presided over and the findings were made and sentence pronounced by the same judge who was holding the court at the time of the publications complained of. His legal right to conduct the trial is not questioned; indeed, it is obvious that, in the typical case of direct contempt, to require a substitution of judges before the contempt could be punished would be to deprive the proceeding of its summary character and destroy its efficiency as a means of securing the unimpeded administration of the law. However, there are frequent cases where, even though mistakenly, a general belief may easily arise that there is a personal controversy between the contemner and the judge of the court. Even in cases of this class, if the necessity for summary action or if other reasons make impracticable the substitution of another judge to hear the contempt matter, the duty of the regular judge of the court to proceed with it is clear, no matter how embarrassing this duty may be to him; but, in these cases,

**72.** 13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure, § 3542 at 577–78 (2d Ed.1984).

**73.** *United States v. Olander*, 584 F.2d 876 (9th Cir.1978); *United States v. Bray*, 546 F.2d 851 (10th Cir.1976).

**74.** *United States v. Owens*, 902 F.2d 1154, 1156 (4th Cir.1990).

**75.** *Owens*, 902 F.2d at 1156.

**76.** *In re Allied–Signal, Inc.*, 891 F.2d 967, 970 (1st Cir.1989).

**77.** *Allied–Signal*, 891 F.2d at 970.

**78.** *Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954); *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925) (The judge may "properly ask that one of his fellow judges take his place." 267 U.S. at 539, 45 S.Ct. at 396).

**79.** 237 F. 986 (6th Cir.1916).

if there is no immediate urgency, and if no other reason exists making it specially appropriate that the same judge act, we think it by far the better policy to call in another judge; and the federal system provides special facility for so doing. We can well understand the reluctance with which a District Judge would put himself in a position which seemed to be a shifting to another of this sometimes very burdensome and very delicate duty; but it is of the greatest importance that contempt proceedings be put, as far as possible beyond the reach of even unjust adverse criticism, and, in such a situation as has been recited, the judges of this court upon whom the duty may fall will always be ready to assign a judge from another district.[80]

Similarly, in *United States v. Martin–Trigona*[81], the Second Circuit noted:

We are not here confronted with a case in which the trial judge has apparently not found any need for immediate action in order to preserve the court's authority and accordingly has deferred the sentence for contempt until after the trial.... In such a case the desirable procedure is to cite the individual for contempt and refer the contempt charge to another judge for hearing after giving appropriate notice and an opportunity to be heard, particularly if the trial judge has become personally embroiled with the contemnor.[82]

The procedure approved in *Martin–Trigona* is the very same procedure this court followed in the *Phillips* case. The court cited Mr. Fawer for contempt and referred the case to the Chief Judge to have another judge designated to hear the matter. In this case, there is a total absence of personal bias or prejudice on the part of the judge against the defendants or Mr. Fawer.

## H. The Personalization of the Court's Rulings

Defendants complain about the personalization of the court's rulings. However, this objection is really directed to the defendants' disagreement with the court's rulings. The court has considered all of the defendants' complaints on this claim and finds they are without merit. Many of these complaints have been covered elsewhere in this opinion and need not be repeated here. Some need no further discussion other than to say the court has carefully considered all of the defendants' contentions and finds them to be without merit.

## IV. Recusal Motion II

██ Andrew Martin, Cecil Brown and Bobby Johnson have filed a separate motion to recuse this judge because my son is an associate in a law firm which is representing a co-defendant, Stephen Edwards. The record is clear that Gordon Polozola is not enrolled as counsel in this case, will not work on this case, and is an associate and not an equity partner in the Kean, Miller law firm. The Court's findings are based on a statement submitted by the Kean, Miller law firm. The defendants concede that my recusal is not mandatory under the facts of this case. The clear language of § 455(b)(5)(ii) does not require my mandatory recusal.

██ Furthermore, the Fifth Circuit and the written advisory opinions of the Judicial Conference Committee on Codes of Judicial Conduct do not require a judge to recuse himself where his son is an associate in a law firm which is counsel of record for a party.[83] In *United States ex*

---

**80.** *Toledo Newspaper,* 237 F. at 988.

**81.** 759 F.2d 1017 (2d Cir.1985).

**82.** *Martin–Trigona,* 759 F.2d at 1025.

**83.** In their motion in support of recusal, defendants Brown, Martin and Johnson concede that if Chief Judge Polozola's son is not a partner and will not be a partner during the time this case is pending before Chief Judge

*rel Weinberger v. Equifax, Inc.,*[84] the district court judge's son was an associate of the law firm representing Equifax. The judge's son did not actively participate in Equifax's defense so as to be an acting lawyer under Section 455(b)(5)(ii). In deciding against the disqualification of the judge, the Fifth Circuit also noted that the " 'financial interest' provision [Section 455(b)(5)(iii) ] might apply if the district judge's son were a partner in the firm. But his status as an associate removes that fear. His salary interest as an associate is too remote to fall under this 'financial interest prohibition.' "[85]

Other circuits follow the Fifth Circuit rule. Thus, in *Southwestern Bell Telephone Co. v. Federal Communications Commission,*[86] the Eighth Circuit recently summarized the law of the various circuits on whether a district judge must recuse himself when a law firm in which his son or daughter is an associate is involved in a case pending before the judge. The Eighth Circuit stated:

> Our court's precedents make clear that "an employment relationship between a party and a judge's son or daughter does not per se necessitate a judge's disqualification." *In re Kansas Pub. Employees Retirement Sys.,* 85 F.3d 1353, 1364 (8th Cir.1996) (*In re KPERS* ); see also *Jenkins v. Arkansas Power & Light Co.,* 140 F.3d 1161, 1164–65 (8th Cir.1998) (quoting In re KPERS). "Rather, the determination of whether a conflict exists in a given situation is factually bound." *In re KPERS,* 85 F.3d at 1364. Therefore, I look to the particular facts to help determine whether recusal is merited.

> In *In re KPERS,* our court was faced with a district judge's decision not to recuse himself when his daughter accepted an employment offer from a law firm which represented a party in the action before him. Noting that the judge's daughter was not personally involved in the litigation before him, and that as a salaried associate with traditional employee benefits she could not be substantially affected by the outcome of the case, our court affirmed the district judge's decision not to recuse himself. See 85 F.3d at 1364. In *Jenkins,* decided in April of this year, our court reaffirmed both the holding and the logic of *In re KPERS.* See 140 F.3d 1161, 1164. Our resolution of these cases accords with the decisions of our sister circuits. *See,* e.g., *Bartholomew v. Stassi–Lampman,* 95 F.3d 1156 (9th Cir. 1996) (unpublished) (recusal not required where judge's child is a salaried associate with law firm representing a party, as long as child does not actively participate in case); *United States ex rel Weinberger v. Equifax, Inc.,* 557 F.2d 456, 463–64 (5th Cir.1977) (same), cert. denied, 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *Benko v. Judges' Retirement Sys.,* No. 97–1241, 1998 WL 199798, at *4 (6th Cir. Apr.15, 1998) (unpublished) (recusal not required where judge's daughter was employed by the state attorney general's office which represented a party, because daughter was not involved in litigation); *In re National Union Fire Ins. Co.,* 839 F.2d 1226, 1229–30 (7th Cir.1988) (recusal not required where party has retained judge's son to represent it in an unrelated matter); cf. *Hunt v. American Bank & Trust Co. of Baton Rouge,* 783 F.2d 1011, 1016 (11th Cir.1986) (recusal not required where judge's law clerk has accepted offer of future employment with law firm representing a

---

Polozola, no recusal is required. (Rec.Doc. No. 28, p. 4).

**84.** 557 F.2d 456 (5th Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

**85.** *Equifax,* 557 F.2d at 463, cited with approval in *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1113 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

**86.** 153 F.3d 520 (8th Cir.1998).

party to the case, as long as law clerk does not personally work on the case).

Nor is recusal automatically required where the judge's child is employed by a party to the dispute. *See Datagate, Inc. v. Hewlett–Packard Co.,* 941 F.2d 864, 871 (9th Cir.1991), cert. denied, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 882 F.2d 1556, 1568 (Fed. Cir.1989), cert. denied, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990).[87]

Furthermore, Advisory Opinion No. 38 [88] issued by the Judicial Conference Committee on the Codes of Judicial Conduct provides that a district judge does not have to disqualify himself in cases involving the United States Attorney's office where his child is an Assistant United States Attorney, provided the child does not appear in, nor perform, any cases assigned to the judge.[89] In Advisory Opinion No. 58,[90] the Committee held that a judge is not required to recuse himself unless the judge's child "participates in the representation of a party in a case before the judge or is an equity partner in a law firm which represents a party." [91] The Committee further held that if the child "is an associate or non-equity partner and has not participated in the preparation or presentation of the case before the judge and the [child's] compensation is in no way dependent upon the result of the particular case before the judge, recusal is not mandated." [92]

The court also finds that a reasonable person would not question my impartiality because my son is an associate in the Kean, Miller firm. The government does not seek my recusal on this ground, nor do the remaining defendants in the case. This judge and other judges of this district have tried numerous cases involving law firms where the judge's child was an associate and not involved in the case. Appropriate measures have been taken by the Kean, Miller law firm and this court to avoid any appearance of impropriety in this or any other case.[93] Nothing more is required, and disqualification on this ground is not necessary under the facts of this case.

## V. Summary and Conclusion

For reasons set forth above, the court denies the defendants' motions to recuse me in this case.[94] The court also finds that since I have denied defendants' motions to recuse me in this case, the motion to recuse the other judges of this court is denied as moot. A review of the record fails to reveal either bias from personal or extra-judicial sources against any party or attorney or pervasive bias or prejudice by otherwise judicial conduct. There is also no reason to believe my impartiality will be reasonably questioned by the parties or any other reasonable person.

The grounds urged for my recusal consist of judicial rulings and routine administrative efforts. All occurred in the course of judicial proceedings. None relied on knowledge acquired outside such proceedings. Finally, none of defendants' allegations or the facts of this case display deep-seated and unequivocal antagonism that would render fair judgment and a fair trial impossible.

---

**87.** *Southwestern Bell,* 153 F.3d at 522.

**88.** August 1, 1974, reversed July 10, 1998.

**89.** Committee on Codes of Judicial Conduct Advisory Opinion No. 38.

**90.** Committee on Codes of Judicial Conduct Advisory Opinion No. 58.

**91.** Committee on Codes of Judicial Conduct Advisory Opinion No. 58.

**92.** Committee on Codes of Judicial Conduct Advisory Opinion No. 58.

**93.** The court has also recused one of its law clerks, who will begin employment with the Kean, Miller firm in August, 1999, from working on this case.

**94.** The court has considered all of the contentions of the parties whether specifically discussed herein or not.

This judge knows that he is required to preside in this case in a fair and impartial manner without bias, prejudice or sympathy for or against any party. That is what the law and my oath of office require, and that is what I shall do in this case or in any other case in which I am privileged to preside.

The motions to recuse are DENIED.

It is so ordered.